MATTER OF V—R—

In DEPORTATION Proceedings

A-11622973

*Decided by Board July 5, 1961*

Deportability—Section 241(a)(5), 1952 act—Failure to register under 1940 act not included as ground of deportation—Each willful failure to register under 1952 act constitutes separate deportation ground—Suspension of deportation—Eligibility under section 244(a)(5)—Ten-year period determined by date of last deportable act.

(1) Mere failure to comply with reporting provisions of Alien Registration Act of 1940 held not a ground of deportation under Immigration and Nationality Act or prior statutes.

(2) Each willful failure to comply with annual registration requirements of section 265 of Immigration and Nationality Act constitutes separate basis of deportability under section 241(a)(5) of Act.

(3) Ten-year period of physical presence and good moral character required to establish eligibility for suspension of deportation under section 244(a)(5) of Act is computed from date of *last* act which made alien deportable. Where alien's willful failure to register occurred in more than one year, date of *last* commission of such offense determines commencement of ten-year eligibility period.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under section 3, Act of 1917—Stowaway.

BEFORE THE BOARD

DISCUSSION: This motion asks reconsideration of the Board's order of December 16, 1960, denying the respondent's application for suspension of deportation. The motion is opposed by the Service.

The facts have been fully stated in previous orders. The respondent, a 33-year-old married male, allegedly stateless, concedes that he entered the United States as a stowaway about October in 1949. The sole issue concerns the respondent's statutory eligibility for suspension of deportation.

Under the workings of the suspension law at present, the respondent is ineligible for relief unless he can show that he is deportable on the more serious grounds set forth in section 244(a)(5) of the Act (8 U.S.C. 1254(a)(5)). Section 244(a)(5) provides

340

that the Attorney General may, in his discretion, suspend deportation of an alien who—

is deportable under paragraph * * * (5) * * * of section 241(a) for an act committed or status acquired subsequent to such entry into the United States or having last entered the United States within two years prior to, or at any time after the date of enactment of this Act, is deportable under paragraph (2) of section 241(a) as a person who has remained longer in the United States than the period for which he was admitted; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character * * *.

The respondent claims that he is deportable under paragraph (5) of section 241(a) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(5)) for failure to comply with the provisions of section 265 of the Act (8 U.S.C. 1305) because from 1949 to 1954 he willfully failed to comply with the alien registration laws. Section 241(a)(5) of the Act provides as follows:

Sec. 241. (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who— * * *
    (5) has failed to comply with the provisions of section 265 [Immigration and Nationality Act; 8 U.S.C. 1305] unless he establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful, or has been convicted under section 266(c) of this title [8 U.S.C. 1306(c)], or under section 36(c) of the Alien Registration Act, 1940, or has been convicted of violating or conspiracy to violate any provision of the Act entitled "An Act to require the registration of certain persons employed by agencies to disseminate propaganda in the United States, and for other purposes," approved June 8, 1938, as amended [Title 22, sections 611–621], or has been convicted under section 1546 of title 18 of the United States Code.

Section 265 of the Immigration and Nationality Act states:

Every alien required to be registered under this title, or who was required to be registered under the Alien Registration Act, 1940, as amended, who is within the United States on the first day of January following the effective date of this Act [December 24, 1952], or on the first day of January of each succeeding year shall, within thirty days following such dates, notify the Attorney General in writing of his current address and furnish such additional information as may by regulations be required by the Attorney General. * * *

Before we can consider whether the respondent is deportable under section 241(a)(5), it is necessary to discuss the Service contention that it is improper to go into the matter because the charge has not been lodged by the Service. The Service relies upon *Ntovas v. Ahrens*, 276 F.2d 483 (C.A. 7, 1960), cert. den. 364 U.S. 826. Counsel believes that *Ntovas*, which did not concern suspension of deportation, is distinguishable because the charge there (entry by fraud) involves a purely subjective matter and the charge here has an objective element insofar as failure to report an address is concerned. At this point we shall *assume* for the sake of argument tha

341

in a deportation proceeding an alien has the right to have a charge considered which would make him eligible for suspension of deportation.

One is deportable for failure to comply with section 265 only if the lack of compliance is willful or without reasonable cause. The failures to comply with section 265 in January 1953 and 1954 were willful. We can *assume* on this record that the respondent is deportable under section 241(a)(5). This hurdle over, the respondent must prove that at least ten years elapsed after the grounds for deportation arose, and that during the ten years immediately preceding the application he had been both physically present in the United States and of good moral character (*Matter of M—*, 5—261, 268; *Matter of H- -*, 8—122).

This brings us to the crux of the problem. What is the ten-year period "immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation"? It is our view that the ten years begin to run from the time the *last* thing occurred which made the alien deportable. Counsel is of the belief that the ten years run from the time the *first* thing occurred which made the alien deportable. This he believes happened in January 1950 when the respondent failed to comply with the provisions of the Alien Registration Act of 1940.[1] We did not agree with counsel's view. Following our test, we held that ten years must pass after the last willful failure to register (January 1954). Thus, under our view, the respondent will not be statutorily eligible for suspension of deportation until 1964.

Counsel strongly contends that we must be wrong in this view because it limits the number of aliens who would be eligible for suspension of deportation. His point is that the alien who had willfully failed to report his address without reasonable excuse could not, under the Board's view, begin to accumulate the ten years of physical presence required under section 244(a)(5) until he had registered; however, the registration would reveal his illegal presence and increase the chances of his apprehension and deportation before he could attain the necessary physical presence in the United States.

While it is true that our interpretation limits the number of aliens eligible for suspension of deportation, several observations are in order. First, we believe that the suspension section exists to grant relief in those cases where the authorities, for one reason or another, have been unable to apprehend the alien and enter a final order of deportation with dispatch. The section is not an invitation to aliens to enter the United States illegally on the promise

---

[1] See footnote 4 for the duties then placed upon an alien under the alien registration laws.

that they will have a sporting chance to avail themselves of the relief, nor is the section intended to give an alien illegally in the United States the *right* to mature an unlawful presence into eligibility for suspension of deportation. It is, therefore, proper, although suspension relief exists, to apprehend and deport aliens illegally in the United States even though it prevents them from becoming statutorily eligible for suspension of deportation. And it is proper to require an alien illegally in the United States to comply with the Immigration and Nationality Act provisions applicable to all aliens although compliance may reveal the illegal presence to authorities.[2]

Second, as our interpretation does declare that aliens who have willfully or without reasonable excuse failed to comply with alien registration requirements are statutorily ineligible for suspension of deportation if they continue in their failure to comply with the alien registration laws, it may be well to consider that important classes of deportable aliens are barred from suspension of deportation. For example, aliens on parole, despite the years of residence they may accumulate, are not eligible for suspension of deportation, and aliens who entered before June 27, 1950, and who were excludable on criminal grounds, *etc.*, are ineligible for suspension of deportation. Aliens (including stowaways) who entered the United States prior to June 27, 1950, who are *not* deportable as subversives, immoral persons or criminals, *etc.*, were eligible for suspension of deportation if they applied before December 1957 but are ineligible if they failed to apply in time (*Matter of L—*, 5—202, 205; *Matter of M—*, 5—598; *Matter of D—*, 5—285). Although stowaways are eligible for suspension of deportation under section 244(a)(4) of the Immigration and Nationality Act if they came *after* June 26, 1950, they are not eligible if they came before that date.

There exist these large classes of deportable aliens who are not eligible for suspension of deportation. Some of the aliens in these classes have long periods of residence and are deportable only on grounds considered less serious by Congress. This being so, it does not appear contrary to the intent of Congress to hold that one who has violated the law willfully or without reasonable excuse should

---

[2] Congress regarded failure to comply with the alien registration laws as a serious matter. Criminal penalties are provided (section 266(b), Immigration and Nationality Act; 8 U.S.C. 1306 (b)), and an alien who had failed to register was expressly denied the privilege of voluntary departure without the institution of deportation proceedings (section 242(b), Immigration and Nationality Act; 8 U.S.C. 1252(b)). Such an alien is ineligible for voluntary departure after deportation proceedings have been instituted unless he is eligible for suspension of deportation (section 244(e), Immigration and Nationality Act; 8 U.S.C. 1254(e)).

not be eligible for suspension of deportation until he stops his violation.

There is, of course, an inconsistency in the state of affairs which denies relief to a deportable alien who failed to apply prior to December 1957 unless he is also deportable on one of the *more* serious grounds which fall under section 244(a)(5). This apparent lack of consistency and the existence of classes of aliens with long residence who are ineligible for suspension of deportation may be as good an answer as any to counsel's argument that it is unfair to his client that an alien deportable as a subversive can terminate his clandestine subversive activity and have a good chance of staying out of the hands of the immigration authorities, thus accumulating ten years of presence in the United States; whereas, the respondent, by the fact of complying with the alien registration laws, would give the authorities information of his illegal presence and his current whereabouts, lessening his chance of remaining in the United States.

While the law is remedial in nature, and should be interpreted liberally, we do not think that counsel's interpretation is a proper one. We believe that the law makes statutory eligibility for suspension of deportation dependent upon the passage of a fixed period of five or ten years, as the case may be, after the occurrence of the last act which made the alien deportable, both to encourage cessation of the undesirable acts which are grounds for deportation and to afford the administrative authorities an adequate basis for determining if the exercise of discretionary relief is justified. Moreover, it seems quite unlikely to us that Congress could have intended that the alien whose wrongdoing continued to the moment of his apprehension should have the same favorable opportunities as the alien whose wrongdoing ceased ten years prior to his apprehension. Thus, we hold that the criminal, the subversive, the narcotic addict, the prostitute and the manager of the house of prostitution, the undesirable resident, *etc.*, are not statutorily eligible unless ten years have elapsed since the last commission of an act making them deportable. Thus, the alien who had been a subversive, *etc.*, for the 20-year period prior to his apprehension by the authorities could not, upon his claim that he had terminated membership the day after his apprehension, show statutory compliance with that portion of the suspension section requiring him to have been physically present in the United States for the continuous period of not less than ten years immediately following the commission of the act or assumption of the status constituting a ground for deportation.

Counsel cites *Matter of B—*, 7—400, which he believes supports his view that the proper test for the running of the necessary ten year period is from the first commission of an act which makes an alien deportable regardless of whether the act continues. B—, an alien

crewman, had been admitted for a short period of shore leave on August 29, 1950. He overstayed his leave and was ordered deported in 1956. He applied for suspension of deportation. The Board felt that the alien would have been eligible for suspension of deportation ten years after the date he first overstayed his shore leave. Counsel believes that to be consistent with the instant case, the Board in *Matter of B—* would have had to rule that the ten-year period did not begin to run until the overstay had terminated. We believe the situations are distinguishable. One difference between an alien who overstays his shore leave and one who fails to comply with the Alien Registration Act is that the law calls upon an alien in the United States to periodically make compliance with its provisions under penalty of deportation, whereas, there is no corresponding requirement of action concerning an alien who overstays his leave. Then again, the overstay cannot stop unless the alien leaves the United States; in the other case, the forbidden act can stop although the alien remains in the United States. It is, therefore, not improper, since some time of beginning must be selected, to base the beginning of the ten-year period in the overstay case upon the time the violation occurred and in the other cases to base the running of the period upon the last forbidden act performed. Moreover, while the overstayed alien is mentioned in section 244(a)(5), it is not part of the first group mentioned in that section but is treated separately with limitations which do not apply to the other grounds, and it is unlike the other grounds mentioned in section 244(a)(5) in that it is not included as a case where voluntary departure is precluded without the institution of deportation proceedings (section 242(b), Immigration and Nationality Act; 8 U.S.C. 1252 (b); see also, section 244(e); 8 U.S.C. 1254(e)). If the test is different for the overstayed alien, it would not necessarily require that the other cases be handled in a similar fashion.

*Matter of D—*, 5—285, also cited by counsel, involves a question as to whether a person deportable on a ground stated in section 244(a)(5) was taken out of that section by the fact that he was deportable on a ground not contained in that section. We are not concerned with this issue.

We have carefully considered counsel's contention that the position of this Board is not supported by its cited precedents. Both, *Matter of P—*, 6—166, and *Matter of H—*, 8—122, state that a continuing act which is a ground for deportation, such as Communist Party membership, must have been terminated for ten years before the alien is eligible for suspension of deportation under section 244 (a)(5). (The point is made even clearer in *Matter of O—*, 7—457, 458, where we held that eligibility for suspension of deportation under section 244(a)(5) "depended upon the respondent establishing that

10 years had elapsed between the time his membership in the Communist Party ceased and the date on which he submitted and executed his application."[3] To same effect is *Matter of V—*, 6—723.)

Counsel argues that the Board has incorrectly confused statutory eligibility with the application of discretionary standards. We do not believe we have. The contention is made that the Board found that the respondent's failure to register because of his fear of apprehension constituted bad moral character. The Board did not rule on this point finding it unnecessary to consider the good moral character problem or the discretionary aspects since the respondent had failed to establish his statutory eligibility for suspension of deportation as he did not have the requisite ten-year period of residence. We see no reason to change the position we previously took.

The special inquiry officer held that the respondent was ineligible for suspension of deportation on a different ground than the one we have been discussing. He ruled that the failure to register prior to 1953 was not a basis for deportation and never did become one, but that it was only with the passage of the Immigration and Nationality Act that mere failure to comply with the alien registration provisions became a ground of deportability, and then only if the failure was to comply with the provisions of section 265 of the Immigration and Nationality Act of 1952. The special inquiry officer held that since the respondent had not and could not become deportable for failure to comply with the provisions of section 265 of the Immigration and Nationality Act until 1953 (the first year his registration was required under section 265), the respondent did not become deportable under section 241(a)(5) until 1953; that he, therefore, could not establish that he had the requisite ten-year period of physical presence until 1963; and that he was, therefore, ineligible for suspension of deportation. We did not discuss the merits of this ruling which had been strongly opposed by counsel because we thought we were resting our decision upon a ground which had become accepted. However, since counsel takes strong issue with our ground of decision, we believe administrative purposes will

---

[3] We invite attention to *Buffalino v. Holland*, 277 F.2d 270 (C.A. 3, 1960), cert. den. 364 U.S. 863. Buffalino had failed to furnish the Attorney General with his address in January 1956 and January 1957. The question was whether he had been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act constituting a ground for deportation. The court held that Buffalino could not satisfy the requirement of physical presence "for a continuous period of not less than ten years immediately following the commission of such *acts*" (p. 280; emphasis added). The issue before us was not raised, but it appears to us the court thought that the running of the period would have to follow the commission of the last of the two acts in question.

best be served by now going into the merits of the special inquiry officer's ruling.

We think the special inquiry officer's view that the respondent is not deportable for failure to register prior to January 1953 is correct. The ground on which the respondent deems himself deportable (failure to comply with the provisions of section 265) did not exist prior to January 1953, and the respondent's failure with regard to the alien registration laws prior to the Immigration and Nationality Act was not made a ground of deportation by the Act. This is not a matter of form but of substance (see *Matter of D—*, 6—285).

Counsel points out that the provisions of the Alien Registration Act of 1940 were in effect prior to the Act of 1952 and required affirmative action by the alien.[4] For our purposes, this is not material. Mere failure to comply with the provisions of the 1940 Act was not a ground of deportation under the immigration laws prior to the Immigration and Nationality Act of 1952 and was not made a ground under the Immigration and Nationality Act. We have no authority to make those past acts a deportable ground by implication. Moreover, the fact that section 241(a)(5) of the Immigration and Nationality Act under which the respondent claims that he is deportable does permit deportation where there has been a *conviction* for violation of *one* provision of the Alien Registration Act of 1940 (section 36(c)) would seem to be authority for excluding violations of sections of the 1940 Act which have not been specified.

*Matter of M—*, 5—261, is cited by counsel as having a factual situation similar to that found in the instant case because M—, ordered deported on the basis of a narcotic conviction in 1937 which had not become a deportable ground until 1952, was declared eligible for suspension of deportation under section 244(a)(5). The case is distinguishable because the Immigration and Nationality Act of 1952 made a narcotic conviction which had occurred before its passage a ground of deportation. In the instant case, a violation of the alien registration laws prior to 1952 was made a ground of deportation only if it concerned a conviction of a certain section

---

[4] At the time of the respondent's entry in October or November 1949, the law required an alien who had not been registered and fingerprinted to have these things done within 30 days of arrival (section 31(a), Act of June 28, 1940 (54 Stat. 673–4)). An alien was then also required to give notice of changes of address (section 35, Act of June 28, 1940 (54 Stat. 675)). The last section was amended by the Act of September 22, 1950 (64 Stat. 987) which required resident aliens to give notification of their current address within ten days of January 1st of each year starting with January 1, 1951. The alien registration requirements, found in the Act of June 28, 1940, as amended, were repealed by the Immigration and Nationality Act. Mere failure to do any of these acts was not made a ground of deportation.

not involved here. It would obviously be improper to enlarge the deportable class defined by section 241(a)(5) by including in it violators of those sections of the 1940 Act other than those specified by Congress.

Counsel argues that the failures to register after the original failure in 1950 are not deportable acts in and of themselves because they all arose out of a single scheme or a continuing scheme. As far as this case is concerned, the failures to comply with the alien registration laws prior to the Act are not grounds of deportability and do not become so because the failures are repeated after the Act became effective; also, failure to comply with the alien registration laws prior to the Immigration and Nationality Act cannot be an excuse for failure to comply with the express requirements of the Act. Moreover, we believe that an alien's intention to avoid registration, formed at an early date, does not excuse him from compliance with the law after the first violation. Since there is a duty of registering each year, any failure is a ground of deportation under section 241(a)(5). (See, *United States* v. *Zeid*, 281 F.2d 825 (C.A. 3, 1960), cert. den. 364 U.S. 901; obligation to file current address card under the 1952 Act arose at least in 1953, conviction for the year 1958 obtained.)

Furthermore, an intent to commit more than one crime—a "single scheme"—is material only because Congress has specifically made it a factor in the deportation of aliens convicted of crime (section 241(a)(4); 8 U.S.C. 1251(a)(4)). The qualification has not been extended to include section 241(a)(5) under which the respondent claims he is deportable. Furthermore, if a single scheme exists, it implies the commission of more than one act and that punishment has been imposed for more than one act. It is immaterial to us under section 241(a)(4) that one of the acts is an early one and one a later one because neither act is sufficient as a ground of deportation. However, as far as section 241(a)(5) is concerned, the later act alone can be a ground for deportation.

We have carefully considered each case cited by counsel and have carefully reviewed his brief of September 13, 1960, and the oral argument in connection with that appeal. We find that the respondent is ineligible for suspension of deportation.

The Service representative argues that since the respondent comes within both section 244(a)(4) and section 244(a)(5), he would not be eligible for suspension at all. Since the respondent is not shown to be eligible under either section, we need not discuss this contention.

The Service representative is of the belief that Congress intended that a restrictive effect be given suspension of deportation because the grant of such relief had caused law-abiding aliens on waiting lists for visas to endure long waits due to the exhaustion of the

quota which in some cases could be attributed in part to the taking of quota numbers by successful applicants for suspension of deportation. We believe that the Congressional statement in this regard shows concern not with statutory eligibility but with the manner in which discretionary relief should be applied.

**ORDER:** It is ordered that the motion be and the same is hereby denied.