Louie King FONG, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 17744.

United States Court of Appeals
Ninth Circuit.

June 27, 1962.

Sullivan, Redman & Winsor, and John
J. Sullivan, Seattle, Wash., for appellant.

Brockman Adams, U. S. Atty., and
Phillip DeTurk, Asst. U. S. Atty., Seattle,
Wash., for appellee.

Before POPE, HAMLEY and
BROWNING, Circuit Judges.

POPE, Circuit Judge.

This case was first instituted by the
filing of a complaint in the District
Court of the United States for the West-
ern District of Washington, by Fong,

as plaintiff, against John P. Boyd, District Director of Immigration and Naturalization Service of the United States Department of Justice, as defendant. The complaint sought judicial review by way of a declaratory judgment of a deportation order of the Immigration and Naturalization Service through its special inquiry officer, which found and determined that the plaintiff Fong was, as a deportable alien, not eligible to apply for or obtain suspension of deportation under Sec. 244(a) of the Immigration and Nationality Act of 1952, (8 U.S.C.A. § 1254(a)).[1]

After answer had been filed in the district court, the litigation there was carried through a pretrial hearing and entry of a pretrial order in which all the facts of the case were stipulated by the parties. Thereafter, and before any further hearing was had in the district court, the Act of September 26, 1961, (Public Law 87–301), 75 Stat. 650 to 657, became effective as of October 26, 1961, 18 U.S.C.A. § 1101 et seq. Section 5 of that Act provided, with certain exceptions not here relevant, that: "The procedure prescribed by, and all the provisions of the Act of December 29, 1950, as amended (64 Stat. 1129; 68 Stat. 961; 5 U.S.C. 1031 et seq.), shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings * * *." It also provided: "Any judicial proceeding to review an order of deportation which is pending unheard in any district court of the United States on the effective date of this section (other than

a habeas corpus or criminal proceeding in which the validity of the deportation order has been challenged) shall be transferred for determination in accordance with this section to the court of appeals having jurisdiction to entertain a petition for review under this section." 8 U.S.C.A. § 1105a. The case was transferred by order of the district court to this court in accordance with the statutory provision quoted.

The record shows that prior to the filing of his complaint in the district court, (the complaint is now treated as a petition for review as provided by the Act of December 29, 1950, (5 U.S.C.A. § 1031 et seq.), petitioner had exhausted all of his administrative remedies.[2]

Petitioner made timely application for suspension of deportation and at a time when no final order of deportation had been served on him. In affirming the order of the special inquiry officer, the Board of Immigration Appeals, to whom the record had been certified, stated the admitted facts respecting the petitioner, as follows: "The pertinent case history will be reviewed briefly. The undisputed facts are that respondent, a native Chinese citizen, was brought to the United States in October 1943 from Trinidad, British West Indies, where he had been taken about 1942, following rescue after the sinking of a British tanker on which he was working as a seaman in the Atlantic. He began sailing in 1941 and the purpose of his admission to the United States in 1943 was to allow him to ship out as a seaman or otherwise give service in the war effort. He registered for military service, was medically examined and classified IV(F). He has re-

1. In the matter before the special hearing officer Fong was held (a) to be deportable; and (b) ineligible for suspension of deportation. The order as to deportation is not in issue here; the only questions presented relate to the order as to eligibility for suspension of deportation. .     .

2. In his complaint in the district court Fong properly named the District Director of Immigration and Naturalization Service as defendant. The new statute, Public Law 87–301, supra, provides that "The action

shall be brought against the Immigration and Naturalization Service, as respondent." The petitioner's briefs in this court continue to describe John P. Boyd, District Director, as defendant, and the brief on behalf of the Immigration and Naturalization Service describes the United States as defendant. We treat Fong as petitioner here, and the Immigration and Naturalization Service as respondent, and the title of the proceedings in this court will be ordered amended accordingly.

mained in the United States continuously and has worked intermittently. He failed to furnish notification of address or other information in February 1953 as required by Section 265 of the Immigration and Nationality Act [8 U.S.C.A. § 1305]. He is unmarried and has no dependent ties here. He has no criminal record. Good moral character and physical presence in the United States for a continuous period of ten years are established. The hardship factor is present. No evidence has been presented to indicate that the alien has any connection with subversive groups. He has lived here 17 years. * * * Although the evidence shows that after admission as a nonimmigrant respondent failed to comply with the terms and conditions of his admission; and/or as a nonimmigrant he remained longer than permitted; and that he acquired a deportable status about 1944 (8 U.S.C. 203, 214 and 215, Act of 1924 *), no charge has been urged under current law based on that violation of the immigration laws (8 U.S.C. 1251 (a) (2)). Respondent has been found deportable solely for failure to furnish notification of address or other information in 1953 as required by Section 265 of the Immigration and Nationality Act. This ground for deportation was lodged in the hearing and is assigned under Section 241(a) (5) of the Immigration and Nationality Act."

The issues considered by the administrative officers and decided against the petitioner were stated as follows: "The controversial issue, as clearly stated by the special inquiry officer and counsel, is a question of law pertaining to one of the statutory requirements which the alien has not met under Section 244(a) (5) of the Immigration and Nationality

Act. This question arises because the alien acquired a deportable status on two occasions, namely in 1944 and 1953, respectively. The question is whether the date of the first deportable status acquired by the respondent in 1944, which constitutes a ground for deportation (other than one specified in Section 244 (a) (5)), may be a basis for computing continuous residence in the United States and thus satisfy the resident provision of the last mentioned section of law, which requires that an alien must have been *physically present in the United States for a continuous period of 'not less than ten years* immediately following the commission of an act or the assumption of a status, constituting a ground for deportation.' The special inquiry officer has ruled in the negative."

The applicable statute, upon whose construction the outcome of this case depends, is Sec. 244(a) of the Immigration and Nationality Act of 1952, (Title 8 U.S.C.A. § 1254(a)), which undertakes to describe and define the persons to whom suspension of deportation may be granted by the Attorney General. That subdivision contains five numbered paragraphs, the fifth of which has significance here. It is the only paragraph under which petitioner could possibly apply for suspension of deportation.[3] Paragraph (5), with the introductory paragraph of the section, reads as follows: "§ 1254. (a). As hereinafter described in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who— * * * (5) is deportable under paragraphs (4)–(7), (11), (12), (14)–(17), or (18) of section 1251(a) of this title

---

* Now 8 U.S.C.A. §§ 1101(a) (15) (A–G), (27) (A–C, F), 1251(a) (1, 2, 9), (e), 1252, 1102, 1184.

3. The other four paragraphs describe various classes of deportable persons but in each case the language of those paragraphs expressly excludes any person in the situation of this petitioner. Thus paragraph 1 refers to an alien who "ap-

plies to the Attorney General within five years after the effective date of this chapter for suspension of deportation"; paragraphs 2, 3 and 4, are expressly limited to aliens who "last entered the United States within two years prior to, or at any time after June 27, 1952". Petitioner cannot qualify under any of those paragraphs because of the indicated time limitations.

for an act committed or status acquired subsequent to such entry into the United States or having last entered the United States within two years prior to, or at any time after June 27, 1952, is deportable under paragraph (2) of section 1251(a) of this title as a person who has remained longer in the United States than the period for which he was admitted; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence."

The report of the special inquiry officer noted that petitioner became deportable at various times:—"he became deportable shortly after entry by accepting employment inconsistent with non-immigrant status or by remaining longer than the period for which he was admitted, which would fix his deportable status as commencing sometime early in 1944." "He also acquired a deportable status by virtue of the charge upon which deportability is based, failure to report his address annually to the Attorney General." His first violation under this provision occurred about February 1, 1953.

It is also to be noted that the first ground for deportability would be the ground mentioned in paragraph 2 of Sec. 1251(a) of Title 8, namely, "Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—* * * (2) entered the United States without inspection or at any time or place other than as designat-ed by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States." It is not one of the paragraphs listed in the first line of paragraph (5) quoted above. However, failure to register is described in paragraph 5 of Sec. 1251(a), which is one of the paragraphs mentioned in paragraph (5) which we have quoted above as a part of Sec. 1254.

The case is one of first impression and neither party has been able to cite cases or decisions in point. In support of the finding of the administrative officers, counsel for the respondent Immigration and Naturalization Service argues that it was necessary for this petitioner to prove that "he has had physical presence in the United States for a continuous period of ten years after he has *last become deportable*." (Emphasis ours.)

The main trouble with that contention is that the statute here in question does not so state. On the other hand, as petitioner shows, the quoted paragraph (5), in referring to physical presence in the United States for a continuous period of not less than ten years, states "immediately following the commission of *an* act, or the assumption of *a* status, constituting a ground for deportation." (Emphasis ours) If it was the intent to give the paragraph the meaning which the special inquiry officer has given it, it would have been a simple matter to have made this language read: "Immediately following the commission of *the* act, or the assumption of *the* status, constituting *the* ground upon which deportation is ordered. * * * *"

■ We think that at the very least it must be said that the manner in which this paragraph is worded left it open to two possible constructions. If that is the case, then the principle which should be applied here is that stated in Barber v. Gonzales, 347 U.S. 637, 642, 74 S.Ct. 822, 98 L.Ed. 1009, as follows: "Although not penal in character, deportation statutes as a practical matter may inflict 'the equivalent of banishment or exile', Fong Haw Tan v. Phelan, 333 U.S. 6, 10,

[68 S.Ct. 374, 92 L.Ed. 433] and should be strictly construed."

Furthermore, to give the language of this section the meaning which respondent has applied in ruling petitioner ineligible for suspension of deportation would make the statutory language appear irrational and lacking in ordinary common sense. The conduct of this petitioner which forms the basis of the order for his deportation is innocuous and minor when compared with the sort of conduct which would constitute the basis for deportation under the various paragraphs listed in the first line of the quoted paragraph (5). Included there are persons convicted of crimes involving moral turpitude, anarchists, members of the Communist party, or persons who advocate totalitarian dictatorship, or the overthrow by force, violence or other unconstitutional means of the Government of the United States; narcotics addicts, persons convicted of violation of laws relating to illicit traffic in narcotic drugs; persons convicted of possession of automatic weapons or sawed-off shotguns. Any of these persons, ten years after the cause of their deportability, would be eligible for suspension of deportation. It does indeed appear to be irrational so to construe this paragraph as to bar from suspension of deportation this petitioner whose record shows years of good behavior, no moral turpitude whatever, and only a minor infraction of law through a failure to register.[4]

■ It seems difficult to square with the statute as a whole any thought that Congress, through the use of ambiguous or vague language in the section here involved, intended to limit its declared purpose[5] of granting the Attorney General broad powers to avoid the hardships of deportation through the use of the authority to suspend deportation. It should be remembered that the use of that power is always subject to the strict limitations of Sec. 1254 which requires Congressional approval of the Attorney General's extension of clemency. As stated in Addison v. Holly Hill Fruit Products, 322 U.S. 607, 617, 64 S.Ct. 1215, 88 L.Ed. 1488: "If legislative policy is couched in vague language, easily susceptible of one meaning as well as another in the common speech of men, we should not stifle a policy by a pedantic or grudging process of construction."

As in the case of Delgadillo v. Carmichael, 332 U.S. 388, 391, 68 S.Ct. 10, 92 L.Ed. 17, we feel that "the hazards to which we are now asked to subject the alien are too irrational to square with the statutory scheme."

■ The statutory provisions relating to suspension of deportation are designed to ameliorate the ordinary drastic consequences of an order of deportation. As stated by Mr. Justice Douglas, in speaking for the Court in Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433: "We resolve the doubts in favor of that construction because deportation is a drastic measure and at times the equivalent of banishment or exile, Delgadillo v. Carmichael, 332 U.S. 388 [68 S.Ct. 10, 92 L.Ed. 17]. It is a forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest

---

4. "Certainly, so harsh a penalty as deportation is far out of proportion with the crime. * * * Such a penalty is not in keeping with the principles of our jurisprudence." U.S.Code Congressional Service, 82nd Cong. 2d Sess., Vol. 2, p. 1753. (Statement of Congressman Celler appended to House Report.)

5. Statement of House Mgrs. on Conference Report, U.S.Code Congressional Service, 82nd Cong., 2nd Sess. Vol. 2, p. 1753: "Similarly, the conferees believe they have applied very broad standards of humanitarianism in composing the differences between both versions of this legislation as they appeared in the sections governing the granting of suspension of deportation."

of several possible meanings of the words used."

■ Accordingly we hold that those portions of the orders of the respondent holding petitioner not eligible for suspension of deportation are invalid and they are set aside. 5 U.S.C.A. § 1032. The cause is remanded to the respondent Immigration and Naturalization Service with directions to modify its orders in conformity with this opinion. 5 U.S.C.A. § 1009(e).

The title of this proceeding is ordered amended as follows: LOUIE KING FONG, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.