353 F.2d 922
 Giuseppe GAGLIANO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
UNITED STATES ex rel. Giuseppe GAGLIANO, Relator-Appellant,
v.
P. A. ESPERDY, District Director of Immigration and
Naturalization of UnitedStates for the New York District, or
such other person, if any, as may have thesaid Giuseppe
Gagliano, Relator, in Custody, Respondent-Appellee.
 Nos. 529, 530, Docket 29445, 29603.
 United States Court of Appeals Second Circuit.
 Argued June 11, 1965.
Decided Dec. 15, 1965.
 
 Julius C. Biervliet, Legal Aid Society, New York City (Mary B. Tarcher, New York City, on the brief), for relator-petitioner-appellant.
 James G. Greilsheimer, Sp. Asst. U.S. Atty. (Robert M. Morgenthau, U.S. Atty. for So. District of New York and Francis J. Lyons, Special Asst. U.S. Atty., on the brief), for respondent.
 Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Consolidated for consideration are two proceedings, one an appeal from an order of the United States District Court for the Southern District of New York, Bonsal, D.J., dismissing appellant Giuseppe Gagliano's petition for a writ of habeas corpus, and the other a petition to review an order of the Board of Immigration Appeals dismissing appellant's motion to reopen deportation proceedings that had been successfully instituted against him. Our principal concern is with the question of statutory construction with respect to Section 244 of the Immigration and Nationality Act, 8 U.S.C. 1254.[1] The threshold issue originally posed was whether Section 244, which specifically excludes from its coverage aliens who entered the United States as crewmen, is applicable to an alien such as Gagliano who originally entered the United States as a crewman, was deported once for the commission of a Section 241(a) (11), 8 U.S.C. 1251(a)(11) deportable offense,[2] subsequently unlawfully reentered the country as a stowaway, and is currently subject to an order of deportation resulting from the reinstatement of the first order. This question has now been resolved, however. The amendment of the Act effective December 1, 1965 removed the bar to relief in the case of crewmen who entered before July 1, 1964.
 
 
 2
 We therefore reach the question whether Gagliano comes within the scope of subsection (a)(1) or (a)(2) of Section 244 since each subsection imposes different conditions which the deportable alien must satisfy before he is entitled to apply for relief by way of suspension. In view of the fact that appellant's current deportation order is grounded on the original deportable offense, one of the grounds specifically enumerated in subsection (a)(2), and because the two subsections are mutually exclusive, we hold that subsection (a) (1) is inapplicable to Gagliano and that he comes under subsection (a)(2). We further hold the District Court's ruling correct that appellant's twenty-eight years continuous residence in this country following the commission of the 241(a)(11) deportable offense does not satisfy the ten year residence requirement under subsection (a)(2), for the ten year period commences to run from the time that he committed the last deportable offense for which deportation is sought. The District Court's denial of appellant's petition for a writ of habeas corpus is accordingly affirmed.
 
 
 3
 We also agree with the Board's finding, largely based on appellant's own testimony, that appellant reentered the United States in 1958 thus making him ineligible in any case for relief under subsection (a)(1) since that subsection requires seven years continuous residence in this country immediately prior to the making of the application. Appellant, in moving the Board to reopen the deportation proceedings, contended simply that he had been present in the United States since 1957 and that accordingly he was entitled to apply for the discretionary relief afforded by (a)(1); the Board correctly predicated its refusal to grant the motion on appellant's failure to produce some concrete documentary evidence to that effect. We therefore dismiss appellant's petition for review of the Board order, noting also that since subsection (a)(2) is applicable to the exclusion of (a)(1), his application to the Board under (a) (1) would have been faulty in any event.
 
 I. FACTUAL AND JURISDICTIONAL BACKGROUND
 
 4
 Gagliano first gained entry to this country in 1921 at Boston, Massachusetts as a crewman on a foreign freighter. He continuously resided here, raising a family in the ensuing years, until 1955 when he was deported for having been convicted in 1927 of unlawfully selling narcotics, a deportable offense under Section 241(a)(11). During his thirtyfour years of residence here he was arrested on three other occasions; twice the charges were dropped, and once he was convicted and later pardoned. In 1958 he reentered the United States illegally as a stowaway and successfully eluded the authorities until 1961 when he was finally apprehended. Deportation proceedings were immediately commenced against him under Section 242(f), 8 U.S.C. 1252(f),[3] which directs the Attorney General of the United States to reinstate the original deportation order in cases where it is found that the alien has unlawfully entered the United States after having been previously deported pursuant to an order of deportation on one of the grounds specified in Section 242(e), i.e., Section 241(a)(11). A deportation hearing was conducted before a Special Inquiry Officer as is required under Section 242(b), 8 U.S.C. 1252(b).[4] He found the facts to be as alleged by the immigration authorities and reinstated the original deportation order. Gagliano's appeal to the Board of Immigration Appeals was dismissed subject to further consideration if he proved successful in setting aside the narcotics conviction in coram nobis proceedings which he had already instituted, contending that he was innocent and that he neither had nor was offered the assistance of counsel. The Board's dismissal became final when this court affirmed the District Court's denial of the coram nobis application,[5] United States v. Castelli, a/k/a Gagliano, 306 F.2d 640 (2 Cir.), and the Supreme Court denied certiorari, 371 U.S. 921, 83 S.Ct. 290, 9 L.Ed.2d 231 (1962).
 
 
 5
 In January 1963, the Board denied Gagliano's petition to reopen his deportation case in order that he might apply for suspension of the deportation order pursuant to Section 244(a)(2). The Board grounded its refusal on its finding that appellant did not have the requisite continuous physical residence in the United States to qualify for the discretionary relief afforded by Section 244(a)(2), or 244(a)(1) for that matter. Gagliano then proceeded to bring a declaratory judgment action in the District Court seeking judicial review of the Board's action. The Government moved for summary judgment, and the motion came before District Judge Bryan who reserved judgment pending the Supreme Court's review of Giova v. Rosenberg, 308 f,2d 347 (9 Cir.1962), which posed the question whether Section 106 of the Immigration Act, 8 U.S.C. 1105a, conferred initial jurisdiction upon the Court of Appeals, to the exclusion of the District Court, to review denials by the Immigration Board. Following the Court's resolution of the issue in favor of jurisdiction in the Court of Appeals, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), Judge Bryan filed a memorandum decision dismissing Gagliano's action for lack of jurisdiction. Appellant's subsequent petition for review of the Board decision addressed to this court, brought more than six months after the Board denial, was dismissed because the appeal had not been perfected within the sixmonth time bar specified in Section 106(a)(1), 8 U.S.C. 1105a(a)(1). Gagliano v. Immigration and Naturalization Service, December 23, 1964, Docket No. 29294. We noted at the time that the harshness of the result-- the delay had been caused by Judge Bryan's reserving decision-- was compensated by the availability to Gagliano of the statutory right to apply for a writ of habeas corpus.
 
 
 6
 Gagliano then proceeded in two different directions. He filed a petition with the Board to reopen his deportation proceedings, contending that he reentered the United States in January or February 1957 rather than in the fall of 1958 and that accordingly he had satisfied the seven year residence requirement of Section 244(a)(1). As already indicated, the Board found against him on the factual issue; the Board further noted by way of information that the reinstatement of the deportation order is merely a procedural matter under Section 242(f) and that accordingly the ground for deportation remains the commission of the 241(a)(11) offense, rather than the earlier order of deportation. (Thus, the Board inferred that Section 244(a)(1) is inapplicable.)
 
 
 7
 Galiano also sought relief in the District Court where he filed a petition for writ of habeas corpus under Section 106(a)(9), 8 U.S.C. 1105a(a)(9). The District Court, Bonsal, D.J., denied the application, holding that Gagliano did not come within either of the classes provided in subsections (a)(1) or (a)(2) of Section 244. United States ex rel. Gagliano v. Esperdy, 239 F.Supp. 968 (S.D.N.Y.1965). First of all, the court held he did not come within subsection (a)(1) because his narcotics conviction rendered him deportable under a ground enumerated in subsection (a)(2). Secondly, subsection (a)(2) was found to be inapplicable since Galiano, by illegally reentering the country in 1957 or 1958 as a stowaway, committed an act which constituted a ground for deportation and hence had not satisfied the ten year residence requirement even though he was being deported on the basis of the earlier deportation order. The statutory language 'ten years immediately following the commission of an act * * * constituting a ground for deportation' was construed to mean not the specific act upon which the deportation order is grounded but rather any act that would subject the alien to deportation. Alternatively, the court pointed out that subsection (f) of Section 244 provided that the entire section, including subsections (a)(1) and (a)(2), is not applicable to an alien who entered the United States as a crewman and that that was the manner of Gagligno's original entry in 1921.
 
 II. THE STATUTE
 
 8
 Authorization for the Attorney General to suspend deportation for certain classes of aliens first became a part of the Immigration Act with the enactment of the Alien Registration Act of 1940, 54 Stat. 670, and was intended to ameliorate the extreme hardships in a large number of deportation cases. Gordon and Rosenfield, Immigration Law and Procedure, 7.9a (1964). The 1940 amendment required the alien to prove 5 years of good moral character prior to his application and to show that deportation would result in hardship to his family. A further liberalization of the deportation procedure was afforded by a 1948 change which made the suspension process available to aliens who, regardless of family ties, could establish seven years residence in the United States. Act of July 1, 1948, 62 Stat. 1206. However, because of the abuses that were found to have been perpetrated under these liberal provisions, see S.Rep. 1515, 81st Cong., 2d Sess., Congress incorporated substantial revisions of the sections in the Immigration Act of 1952, 66 Stat. 214. Generally, the 1952 Act made 'significant changes with respect to the discretionary authority to adjust the status of aliens in this country, either from an illegal status to a legal status or from one legal status to another legal status.' 1952 U.S.Code Cong. and Admin.News, at p. 1716.
 
 
 9
 The largely restrictive changes made in the suspension process under the 1952 Act proved to be unsatisfactory. As one writer commented, 'This section (244(a)) is not merely complex; it is also a good example of poor draftsmanship, standing out even in a statute which is not otherwise noted for lucidity.' Comment, 61 Mich.L.Rev. 352, 355 (1962). And a member of the Immigration Service added: The statutory scheme 'was characterized as a pattern for relief that is complex and sometimes almost incomprehensible, and as so involved that even the technical experts had difficulty in understanding it.' Keane, 'Changing Concepts in Discretionary Relief,' 12 INR 30, 35 (1964). Attesting to the accuracy of this criticism was the fact that in the years immediately following the enactment of the 1952 amendments, the number of private immigration bills, which the suspension provisions were intended to help reduce, greatly increased while the number of aliens granted suspension of deportation showed a marked decrease. Se Comment, supra, at 369; 1962 Annual Report of the Immigration and Naturalization Service, 6.
 
 
 10
 Curative legislation was finally enacted in 1962. Immigration Act of 1962, 76 Stat. 1247. The bill originally was intended to extend the benefits under a procedure known as registry, but was converted to a revision of the suspension system in order to augment the relief available to 'certain aliens physically present in the United States.' Conf.Report, H.Rep. 2552, 87th Cong., 2d Sess., p. 4, U.S.Code Congressional and Administrative News 1962, p. 4028. See also Gordon and Rosenfield, supra at 764. 'The 1962 amendments achieved a much needed simplification, eliminating many of the conplexities and obscurities of the statute, reducing from five to two the number of categories it prescribed, and removing some of the obstacles that previously had inhibited the award of relief. However, the need for legislative approval in individual cases in still retained. And the 1962 legislation added new disqualifications, particularly an outright preclusion of relief to all persons who had entered the United States as crewmen.' Gordon and Rosenfield, supra at 764-765.
 
 
 11
 1. The Crewmen Exclusion has been eliminated from our consideration by the enactment of Public Law 89-236, 79 Stat. 919, Sec. 12(b), which provides for exclusion from consideration only of those who entered as crewmen subsequent to June 30, 1964.
 
 2. Subsection (a)(2) Controls
 
 12
 Of the two suspension subsections, we agree with Judge Bonsal that (a)(2) controls here to the exclusion of (a)(1). Subsection (a)(1) specifically excludes from its scope those deportable offenses enumerated in (a)(2), including the ground upon which appellant was originally deported, i.e., Section 241(a)(11). Since under Section 242(f) the original deportation order is reinstated after a hearing in a case where deportation has been ordered pursuant to one of the grounds listed in Section 242(e)[6] and a 241(a)(11) offense is one of the paragraphs so enumerated, the present deportation order is grounded on the commission of the 241(a)(11) offense, thus rendering (a)(2) the exclusively applicable subsection.
 
 
 13
 Appellant, in attempting to bring himself within the scope of subsection (a) (1), makes the argument that the ground for his present deportation is Section 241(a)(1)[7] and not 242(f), that 241(a)(1) refers back to his admissibility under Section 212(a)(23), 8 U.S.C. 1182(a)(23),[8] and that accordingly (a) (1) applies to the exclusion of (a)(2) since the latter does not include either 241(a)(1) or 212(a)(23) within its list of enumerated sections. This argument is without merit. In a situation of this kind, where the alien has unlawfully reentered the country after having once been deported for a narcotics violation and the Immigration Service seeks to reinstate the deportation order under 242(f), 241(a)(11) is the substantive ground for deportation and the fact that the alien was also excludable under 212(a)(23) does not make him any the less deportable under 241(a)(11).
 
 
 14
 Furthermore, under 242(a) reinstatement of the pre-existing deportation order is not automatic. The section is couched in restrictive language, i.e., 'Should the Attorney General find * * *' and the regulations that have been promulgated under it require that a specific procedure be followed. The Attorney General is required to make findings that: (1) the respondent is in fact an alien who was previously deported or who departed while an order of deportation was outstanding; (2) he was previously deported as a member of any of the classes described in the enumerated sections; and (3) he has unlawfully reentered the United States. 8 CFR 242.23. And such findings are to be made in accordance with the other procedural requirements for a deportation hearing. 8 CFR 242.23, 242.1-242.22. Only then may the deportation order be reinstated. See United States ex rel. Blankenstein v. Shaughnessy, 112 F.Supp. 607, 610 (S.D.N.Y.1953). These requirements were met here, so that there is no doubt as to which ground underlies the deportation order.
 
 3. Ten Year Residence Requirement
 
 15
 The final and insurmountable hurdle remaining concerns that part of subsection (a)(2) which requires ten years continuous residence immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation. This language, which is somewhat ambiguous, allows for two possible constructions: (1) ten years continuous residence from the time that the alien committed an act or assumed a status constituting a basis for deportation regardless of whether that was the actual ground for the deportation order that issued; or (2) ten years continuous residence following the commission of the act or the assumption of the status which did in fact form the basis for the deportation order. In other words, under the first interpretation, which was adopted by the District Court, 'an act' or 'a status' is read to mean 'any act' or 'any status' while under the latter construction, urged on this court by appellant, the same words are construed to mean 'the act' or 'the status.'
 
 
 16
 The residence issue is not before a court of appeals for the first time as two other circuits already have passed on the question, reaching different conclusions. In Fong v. Immigration and Naturalization Service, 308 F.2d 191 (1962), the Ninth Circuit settled on the liberal reading principally because it felt that deportation statutes should be restictively construed and because such a contruction was compatible with the Congressional purpose of granting the Attorney General broad powers to avoid the hardships of deportation through the use of the authority to suspend deportation. Id. at 194-195. The circumstances surrounding that case are distinguishable from the situation here, however, in that the last deportable act, which the Immigration Service contended barred Fong's request for discretionary relief, was simply Fong's failure on a single occasion to register in accordance with the requirements of Section 265 (8 U.S.C. 1305)-- a 'minor infraction' said the court. Gagliano, on the other hand, committed the more serious offense of entering the United States as a stowaway, while an excludable alien, earlier ordered deported.
 
 
 17
 The Eighth Circuit in Patsis v. Immigration and Naturalization Service, 337 F.2d 733 (1964), cert. den. 380 U.S. 952, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965), reached the opposite conclusion, reasoning that an alien who has committed a deportable act of any kind within ten years of his application for suspension should not be allowed to apply for such relief for it was this ten year probationary period with which Congress was concerned. 'We would have regarded it as a matter of common sense interpretation,' said the court, 'not to wring good fortune for an alien out of the statute because of a deportable offense committed more than ten years previously when he continues to commit other deportable offenses in the interim.' Id. at 740. We agree, and hold that Gagliano's reentry as a stowaway within the ten year period bars his request for discretionary relief.
 
 
 18
 The judgment of the District Court is affirmed. The petition for reivew is dismissed.
 
 
 
 [1]
 Section 244 provides in pertinent part as follows:
 (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and--
 (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; or
 (2) is deportable under paragraphs (4), (5), (6), (11), (12), (14), (15), (16), (17), or (18) of section 1251(a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
 (c)(1) Upon application by any alien who is found by the Attorney General to meet the requirements of subsection (a) of this section the Attorney General may in his discretion suspend deportation of such alien. * * *
 (f) No provision of this section shall be applicable to an alien who (1) entered the United States as a crewman subsequent to June 30, 1964. (added by Act of October 3, 1965) * * *
 
 
 [2]
 Section 241(a)(11) reads:
 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who--
 (11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate.
 
 
 [3]
 Section 242(f) reads:
 (f) Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section, the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.
 
 
 [4]
 Section 242(b) provides in pertinent part as follows:
 (b) A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. Determination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, unless by reason of the alien's mental incompetency it is impracticable for him to be present, in which case the Attorney General shall prescribe necessary and proper safeguards for the rights and privileges of such alien.
 
 
 [5]
 In affirming the District Court's denial of the application, we pointed out that Gagliano had made no attempt to substantiate his claim other than through his own testimony, which proved to be extremely vague. We expressly declined to speculate as to whether ther were grounds for the exercise of discretionary authority to suspend appellant's deportation order under Section 244
 
 
 [6]
 Section 242(e) provides in pertinent part as follows:
 (e) Any alien against whom a final order of deportation is outstanding by reason of being a member of any of the classes described in paragraphs (4)-(7), (11), (12), (14)-(17), or (18) of section 1251(a) of this title, * * *
 
 
 [7]
 Section 241(a)(1) provides:
 (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who--
 (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry.
 
 
 [8]
 Section 212(a)(23) excludes from entry:
 (23) Any alien who has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, * * *