MATTER OF WONG

In Deportation Proceedings

A–12588659

*Decided by Board November 28, 1969*

When more than one ground of deportation exists and one ground arises later than the other, the period of continuous physical presence required to establish statutory eligibility for suspension of deportation under section 244(a) of the Immigration and Nationality Act, as amended, will be measured from the date of the later deportable violation.

CHARGES:

Order: Act of 1952—Section 241(a)(2) [8U.S.C. 125(a)(2)] Remained longer—crewman.

Lodged: Act of 1952—Section 241(a)(5) [8 U.S.C. 1251(a)(5)]—Failed to furnish notification of address in violation of section 265 of the Act (8 U.S.C. 1305).

ON BEHALF OF RESPONDENT:
Joseph S. Hertogs, Esquire
Jackson and Hertogs
580 Washington Street
San Francisco, California 94111
(Brief filed)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

Respondent appeals from the special inquiry officer's ruling that he is ineligible for discretionary relief.

The main question is whether the physical presence in the United States needed for suspension of deportation is to be reckoned from the first event which made respondent deportable or the last. We hold it is the last. The appeal will be dismissed.

Respondent, a 46-year-old male, a native and citizen of China, admitted in 1960 as a nonimmigrant crewman for a period not to exceed 29 days, remained without authority. On June 19, 1962, a special inquiry officer ordered him deported on the charge stated in the order to show cause. There was no other charge at this hearing. Respondent did not appeal.

In the summer of 1965, respondent failed to report as ordered

427

for deportation. He could not be located (Exs. 5, 6) He left his employment and he moved. He did not notify the Service of his address. He did not file address reports for 1966 and 1967 because he feared he would be located and deported. The Service arrested him on August 21, 1967 (Ex. 7).

On September 20, 1967, respondent moved for reopening of deportation proceedings so that he could apply for suspension of deportation. On September 29, 1967, the special inquiry officer denied the motion because respondent lacked the seven years residence required for such relief. Respondent appealed to the Board. By this time seven years had passed. The Board reopened the proceedings. At the reopened hearing, the respondent applied for suspension of deportation. He admitted that he failed to report for deportation because he did not want to leave the United States, that he hid from the Service, and that he failed to file his annual address report because he was afraid to let the Service know where he was (pp. 9–10). The Service lodged the charge based on his failure to furnish his address (Ex. 9). The special inquiry officer sustained the original charge and the lodged charge.

An applicant for suspension of deportation who is deportable a section 241(a)(5) charge must establish that he has been physically present in the United States "[F]or a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation. . . ." Section 244(a)(2) of the Act, 8 S.C. 1254(a)(2). In *Matter of V—R—*, 9 I. & N. Dec. 340 IA, 1961), we held the period of physical presence required for pension of deportation is measured from the time the alien became deportable. Relying on this rule, the special inquiry officer denied respondent's application for suspension of deportation. He held that the act which last made respondent deportable the failure to file an address report in January 1967, and since it had not been followed by the passage of ten years, respondent was not eligible for the relief.

The difficulty which confronts us arises from the fact that there are conflicting judicial views on the issue. In *Louie King Fong v. INS*, 308 F.2d 191 (9 Cir., 1962), the court rejected our and held that the ten-year period of physical presence starts the commission of the first act. We felt constrained to follow ruling of the court. In *Matter of Bagai*, 10 I. & N. Dec. 683 A, 1964), we overruled *Matter of V—R—*, *supra*, and adopted rule in *Louie King Fong*, *supra*. After we did this, the issue

was reviewed in the Eighth Circuit. The court considered *Louie King Fong, supra*, and *Matter of V—R—, supra*. The court refused to follow *Louie King Fong, supra*, and held that the ten-year period ran from the commission of the last deportable act. *Patsis* v. *INS*, 337 F.2d 733 (1964), cert. denied 380 U.S. 952 1965).

In the following year, both *Louie King Fong, supra*, and *Patsis, supra*, were considered in the Second Circuit. Rejecting *Louie King Fong, supra*, the court followed *Patsis, supra*, and held that the ten-year period ran from the commission of the last deportable act. *Gagliano* v. *INS*, 353 F.2d 922 (1965), cert. denied 384 U.S. 945 (1966).

The issue was also considered in several cases decided before *Louie King Fong, supra*. These cases were not the subject of comment in the cases we have already discussed. In the Sixth Circuit, a court held that an alien could not, in 1958, establish he had the necessary ten years of physical presence when he had been a subversive from 1932 to 1949. See *Williams* v. *Sahli*, 271 F.2d 228 (1959), cert. denied 361 U.S. 966. In an unreported district court case in the Sixth Circuit, a court stated by way of dicta that the ten-year period of physical presence runs from the time of the last failure to furnish an address report. *Krug* v. *Pederson*, C 62–376, N.D. Ohio, E.D. (June 24, 1964). In the Third Circuit, a court held that an alien who was deportable on two grounds arising out of an entry in 1956, and who in 1956 and 1957 failed to report his address, was ineligible for suspension of deportation because he could not establish ten years of physical presence immediately following the commission of such acts. *Bufalino* v. *Holland*, 277 F.2d 270, 280 (1960), cert. denied 364 U.S. 863 (semble) ; *Matter of Bufalino*, 11 I. & N. Dec. 351, 357–358 (BIA, 1965).

Counsel seeks to establish that *Patsis* and *Gagliano* are consistent with *Louis King Fong*. We must dismiss the contention. Counsel seeks to reconcile the cases. He believes they stand for the proposition that when there is more than one deportable ground, the period of physical presence runs from the time the more serious ground arose. To support his contention, counsel relies chiefly upon the fact that in *Gagliano*, the court said that Gagliano committed a more serious offense in entering the United States as a stowaway who had been previously deported than Fong committed by failing to register as required by law—a dereliction Fong had termed "a minor infraction." *Gagliano* v. *INS*, *supra*, at 929.

The language in *Gagliano, supra,* relied upon by counsel must be considered with other language there. When so considered, it is clear that *Gagliano, supra,* does not rest on the attempted distinction. The court went on to say:

The Eighth Circuit in *Pitsis* v. *Immigration and Naturalization Service,* 337 F.2d 733 (1964), cert. den. 380 U.S. 952, 85 S. Ct. 1085, 13 L.Ed.2d 970 (1965), reached the opposite conclusion, reasoning that an alien who has committed a deportable act *of any kind* within ten years of his application or suspension should not be allowed to apply for such relief for it was this ten-year probationary period with which Congress was concerned. "We would have regarded it as a matter of common sense interpretation," said the court, "not to wring good fortune for an alien out of the statute because of a deportable offense committted more than ten years previously when he continues to commit other deportable offenses in the interim." *Id.* at 740. We agree, and hold that Gagliano's reentry as a stowaway within the ten-year period bars his request for discretionary relief (at 929; emphasis added).

Thus, it is clear that *Gagliano* followed *Patsis* and that it regarded *Patsis* and *Fong* as inconsistent with each other. Furthermore, *Patsis* shows that the court rejected the contention that one charge was to be weighed against another as to which was the most reprehensible. The court stated that "[I]t is not for the courts to measure whether failure to file an address card does or does not equate with subversion and immorality. Congress has said in so many words, and clearly, that it does" (*Patsis, supra,* at 741). *Patsis* expressed disagreement with the result in *Fong* and its characterization of the filing requirement "'only a minor infraction of law'" (at 742).

Thus, we have authority in the Second, Sixth and Eighth, and possibly the Third Circuits holding one way, and authority in the Ninth holding the other. This creates a dilemma. We are bound by decisions of circuit courts, but we are concerned with a federal statute which we must give a uniform interpretation in each part of the United States. To follow the majority view in jurisdictions where it has been adopted or where the courts have not spoken on the issue, and to follow the minority view in the Ninth Circuit, is hardly a satisfactory way to achieve a consistent administrative application. In an attempt to achieve uniformity, and to afford the Ninth Circuit an opportunity to review its *Fong* decision in light of decisions in the other circuits, we shall, with due deference to the Ninth Circuit, uniformly follow the rule that when more than one ground of deportation exists and one arises later than the other, the period of physical presence required for suspension of deportation will be measured from the later violation rather than the earlier. See *Matter of Amado,* Interim Decision No.

1951 (BIA, 1969); *Matter of Lim,* Interim Decision No. 1947 (BIA, 1969).

Counsel contends that the Service is inconsistent in that it will in one case use a charge under section 241(a)(5) foreclosing the alien from suspension of deportation, while in other cases with similar facts the charge is not used. In two cases cited, *Matter of Lok,* A10 824 448, and *Matter of Chung,* A10 824 951, alleged to be similar to the instant case, counsel states that suspension of deportation was granted. The cases are not part of our records for they are not cases in which the Board acted. The charge to be used in a deportation case is a determination to be made by the Service. Our concern is with whether or not a charge should be sustained.

Counsel sees an inconsistency in the fact that *Patsis,* although ineligible for suspension of deportation, was held eligible for voluntary departure, but the special inquiry officer here held respondent ineligible for voluntary departure. There is no inconsistency. The ground of deportation in *Patsis* was not a ground which precluded the grant of voluntary departure: one of the grounds here, section 241(a)(5) of the Act does make a person ineligible for voluntary departure unless he is eligible for suspension of deportation, section 244(e) of the Act. We have seen that respondent is not eligible for suspension of deportation.

**ORDER:** The appeal is dismissed.