247 F.2d 769
 DONG WING OTT and Dong Wing Han, Plaintiffs-Appellants,
v.
Edward J. SHAUGHNESSY, District Director of the New York District of the Immigration and Naturalization Service, Defendant-Respondent.
 No. 316.
 Docket 24246.
 United States Court of Appeals Second Circuit.
 Submitted August 2, 1957.
 Decided September 11, 1957.
 
 On Petition for Rehearing.
 Elmer Fried, New York City, for plaintiffs-appellants.
 Paul W. Williams, U. S. Atty., S.D. N.Y., New York City (Charles J. Hartenstine, Jr., and Roy Babitt, Sp. Asst. U. S. Attys., and Harold J. Raby, Asst. U. S. Atty., New York City, of counsel), for defendant-respondent.
 Before CLARK, Chief Judge, and CHASE and HINCKS, Circuit Judges.
 PER CURIAM.
 
 
 1
 We granted the rehearing to the extent of receiving briefs from the parties because we wished to consider the impact on this case of Quan v. Brownell, D.C.Cir., 248 F.2d 89. That decision appears to support the position of the plaintiffs; but while we have been moved to give earnest consideration to it because of our high regard for the tribunal which rendered it, we are constrained to disagree and to continue to follow the Ninth Circuit cases, of which the latest was cited in our opinion.
 
 
 2
 We think our brothers of the District of Columbia have overlooked the continuing vitality of Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585, and cases following it. There it was held that an alien who had been ordered excluded at the time of his attempted entry, but who was released into the United States on parole pending legal proceedings, did not have his status as an excluded affected and the parole did not place him "within the United States" as that phrase is used in the immigration statutes. This distinction between exclusion from entry into the United States because of legal inadmissibility and expulsion under an order of deportation after entry is carefully preserved in the Immigration and Nationality Act of 1952, where Part IV, 8 U.S.C. §§ 1221-1230, contains "Provisions Relating to Entry and Exclusion," while Part V, 8 U.S.C. §§ 1251-1260, deals with "Deportation; Adjustment of Status." Examination of these respective statutes shows a careful differentiation of procedure, see, e. g., 8 U.S.C. § 1226, "Exclusion of aliens — Proceedings," as compared with 8 U.S.C. § 1252, "Apprehension and deportation of aliens — Arrest and custody; review of determination by court."
 
 
 3
 The provision here in issue giving the Attorney-General certain discretionary power to suspend deportation is found only in Part V, 8 U.S.C. § 1253(h); and in the 1952 revision Congress deliberately inserted the words "within the United States" in the earlier act (former 8 U.S. C. § 156, as amended in 1950) as though to make clear that it did not apply to excluded aliens. Hence it did not apply to these plaintiffs, only within the country on parole, which by statute "shall not be regarded as an admission of the alien" and when terminated shall leave their case "to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S. C. § 1182(d) (5). We do not regard this precise statutory scheme as destroyed or limited by the occasional use of "deportation" in its more colloquial sense, e. g., 8 U.S.C. § 1226(a), "shall be excluded and deported," or 8 U.S.C. § 1227(a), providing for the immediate "deportation of aliens excluded from admission or entering in violation of law." The word so used serves an obviously different function than in the Part V statutes dealing with deportation in its legal and technical sense.
 
 
 4
 The petition for rehearing having been granted to the extent indicated, we now reaffirm our decision of July 5, 1957, 2 Cir., 245 F.2d 875, affirming the decision of the district court, D.C.S.D.N.Y., 142 F.Supp. 379.