**UNITED STATES of America on the relation of Giuseppe GAGLIANO, Relator,**

v.

**P. A. ESPERDY, District Director of Immigration and Naturalization of the United States for the New York District or such other person, if any, as may have the said Giuseppe Gagliano, Relator, in Custody, Respondent.**

United States District Court
S. D. New York.
Feb. 23, 1965.

Fried & Mailman, New York City, for relator; Elmer Fried, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for S. D. New York, for respondent; by James G. Greilsheimer, Sp. Asst. U. S. Atty.

BONSAL, District Judge.

Relator, Giuseppe Gagliano (Gagliano), seeks his release under a writ of habeas corpus.

Gagliano, an Italian citizen, first entered the United States in 1921 as a crewman. In 1927, under the name of Joseph Castalli, he was convicted, on his plea of guilty, of the unlawful sale of narcotics and was sentenced to imprisonment for one year. He has a record of three other arrests while in the United States between 1921 and 1955, two of which were dropped, and the third resulted in a conviction and a pardon. He married an American wife, and they have two grown children and some grandchildren.

In 1952 Congress enacted Section 241 of the Immigration and Nationality Act (8 U.S.C. § 1251), providing that, upon order of the Attorney General, any alien in the United States who has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs (subsection (a)11),[1] shall be deported.

Gagliano was deported pursuant to 8 U.S.C. § 1251 in 1955, and in 1957 or 1958 he re-entered illegally as a stowaway.

In 1961 the Immigration and Naturalization Service (Service) instituted deportation proceedings. The Service found: (a) that Gagliano was an alien, a native and citizen of Italy; (b) that he had been deported in 1955 pursuant to an order of deportation, having been convicted of a narcotic violation; (c) that

---

1. The application of the statute to convictions prior to its enactment has been sustained as constitutional. Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); Mulcahey v. Catalonette, 353 U.S. 692, 77 S.Ct. 1025, 1 L.Ed.2d 1127 (1957); Gardos v. Immigration and Naturalization Service, 324 F.2d 179 (2d Cir. 1963).

he had unlawfully re-entered the United States as a stowaway (8 U.S.C. § 1182(a) 18); (d) that he was deportable under 8 U.S.C. § 1251(a) (1) as an alien who entered the United States as a stowaway. On the basis of these findings the Service reinstated the 1955 order of deportation.

Gagliano then applied to the Board of Immigration Appeals (Board) to reopen his deportation proceedings, which application the Board denied in February 1963.

In March 1963 Gagliano petitioned this Court to review the Board's denial of his application. Finding that there was a question as to whether this Court or the Court of Appeals had jurisdiction of Gagliano's petition under § 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a), the District Judge reserved decision pending determination of this question by the Supreme Court. In October 1964 the Supreme Court held, in Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90, that review could only be had in the Court of Appeals. The District Judge thereupon dismissed Gagliano's petition, and he promptly petitioned the Court of Appeals for review of the Board's order. By decision dated December 23, 1964, Docket No. 29294, the Court of Appeals dismissed Gagliano's petition for review on the ground he had not filed it with the Court of Appeals within six months after the Board's ruling (8 U.S.C. § 1105a(a) (1)).

In view of the obvious hardship to Gagliano, who sought review promptly in both courts and lost in both because the District Judge reserved for more than six months pending the decision of the Supreme Court in Giova v. Rosenberg, supra, the Court of Appeals stated in its memorandum that it had considered the procedure suggested in Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941), which presumably would have involved directing the Board to vacate its prior order and re-enter a new one on the same terms so that Gagliano could make a timely petition for review of the reinstated order. However, the Court of Appeals discarded this procedure in favor of suggesting to Gagliano that he seek review by habeas corpus, 8 U.S.C. § 1105a(b).

█ Section 1105a(b) applies only to aliens who have not entered the United States and against whom a final order of exclusion has been made. See Leng May Ma v. Barber, 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); Dong Wing Ott v. Shaughnessy, 247 F.2d 769 (2d Cir. 1957). Cf. Paris v. Shaughnessy, 247 F.2d 1 (2d Cir. 1957); cert. den. 355 U.S. 926, 78 S.Ct. 384, 2 L.Ed. 2d 357 (1958) sub. nom. Paris v. Murff; Vajta v. Watkins, 179 F.2d 137, 139 (2d Cir. 1950). The Court of Appeals doubtless meant to refer to Section 1105a(a) (9), which provides, "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." The Court of Appeals directed that the Service should "conduct Gagliano's deportation in such a manner that an effective opportunity to seek habeas corpus is preserved."

Following the decision of the Court of Appeals, Gagliano promptly applied for a writ of habeas corpus, which was granted on January 4, 1965, and a hearing was held thereon on January 7, 1965.[2]

The only issue here presented is whether the Attorney General may, and in his discretion, should, suspend Gagliano's deportation and adjust his status to that of an alien lawfully admitted for permanent residence pursuant to Section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a), which provides as follows:

"§ 1254. Suspension of deportation—Adjustment of status for permanent residence;

"(a) As hereinafter prescribed in this section, the Attorney General

2. Gagliano was in custody when his writ of habeas corpus was granted. Therefore, for the purpose of this proceeding he is considered as being in custody although he was subsequently released on $5,000 bail.

may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

"(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; or

"(2) is deportable under paragraphs (4), (5), (6), (7), (11), (12), (14), (15), (16), (17), or (18) of section 1251(a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

The threshold problem is whether Gagliano comes within the classes described in subsections (1) or (2) of 8 U.S.C. § 1254(a) because if he does not,

the Attorney General had no discretion to suspend his deportation, Kimm v. Rosenberg, 363 U.S. 405, 80 S.Ct. 1139, 4 L.Ed.2d 1299 (1960), even if he should have found that Gagliano was and is of good moral character (which is not established by the record here), or that his deportation would result in extreme hardship to Gagliano and his family (which hardship does appear since Gagliano's deportation means either separating this 60-year-old man from his wife and family or requiring them to pull up their American roots to accompany him to Italy). For the reasons hereafter stated, Gagliano does not come within either of the classes provided in subsections (1) or (2) of § 1254(a).

Gagliano's conviction of a narcotics offense rendered him deportable under a ground enumerated in subsection (2), viz. subsection (11) of § 1251(a), (8 U.S.C. § 1251(a) (11)), and therefore he does not come under subsection (1). Subsection (2) requires that the alien has been physically present in the United States for a continuous period of not less than ten years following the commission of an act constituting a ground for deportation. By his illegal entry as a stowaway in 1957 or 1958 Gagliano committed an act which constituted a ground for deportation, so that the ten-year period prescribed in subsection (2) has not run and he does not come within the class therein defined. See Patsis v. Immigration & Naturalization Service, 337 F.2d 733 (8th Cir. 1964). But see Fong v. Immigration & Naturalization Service, 308 F.2d 191 (9th Cir. 1962). Indeed, it appears from the record that the Service found that Gagliano had unlawfully re-entered the United States after having previously been deported pursuant to an order of deportation. On the basis of the necessary findings made by the Service, Gagliano's previous order of deportation was deemed to be reinstated from its original date, and he may be deported under that order at any time subsequent to his re-entry (8 U.S.C. § 1252(f)). Cf. United States ex rel. Blankenstein v. Shaughnessy, 112 F.Supp. 607 (S.D.N.Y.

1953). While Gagliano is subject to deportation because of his illegal entry in 1957 or 1958, he is deportable under the 1955 order.

Another insuperable obstacle to Gagliano's coming within subsection (2) is paragraph (f) of the same section (8 U.S.C. § 1254(f)). It provides that paragraph (a) (of which subsections (1) and (2) form a part) is not applicable to an alien who entered the United States as a crewman, which was the manner of Gagliano's original entry in 1921. There would seem no basis here for recognizing Gagliano's illegal entry as a stowaway as entitling him to greater rights than his original entry as a crewman entitled him to. As Justice Cardozo stated, R. H. Stearns Co. of Boston, Mass. v. United States, 291 U.S. 54, at 62, 54 S.Ct. 325, at 328, 78 L.Ed. 647 (1934): "* * * no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong."

■ For the foregoing reasons, Gagliano's writ of habeas corpus must be dismissed. This renders moot the question of whether habeas corpus was the appropriate remedy here. The purpose of changing the statute (8 U.S.C. § 1105a (a)) to provide that a petition to the Court of Appeals shall be the exclusive remedy for the purpose of reviewing a final order of deportation was as stated by Chief Justice Warren in Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), to eliminate delaying tactics in this type of proceeding which resulted from their being entertained in overburdened District Courts. The Court stated:

"The fundamental purpose behind § 106(a) was to abbreviate the process of judicial review of deportation orders in order to frustrate certain practices which had come to the attention of Congress, whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts. * * * The key feature of the congressional plan directed at this problem was the elimination of the previous initial step in obtaining judicial review—a suit in a District Court—and the resulting restriction of review to Courts of Appeals, subject only to the certiorari jurisdiction of this Court. As stated in the * * * Committee report, [H.R.Rep.No. 1086, 87th Cong., 1st Sess. 22–23 (1961)], the plain objective of § 106 (a) was 'to create a single, separate, statutory form of judicial review of administrative orders for the deportation * * * of aliens * *.' "

It is true that Gagliano, by choosing what turned out to be the wrong court, found himself precluded from seeking his remedy in the Court of Appeals within the six month period specified in the statute. It is unlikely that similar cases will occur in the future, which explains the procedure that was followed in this case. However, there is danger that aliens subject to deportation may, for one reason or another, fail to seek review by the Court of Appeals within the statutory period so that they can take the longer road of habeas corpus through the District Court to the Court of Appeals. There may be merit to the thought that in cases of special demonstrated hardship, like this one, that the Service vacate its order and reinstate it so as to enable the petitioner to seek review in the manner which Congress has prescribed.

The writ of habeas corpus is dismissed.

A stay of deportation of twenty days from the order to be entered herein is granted to petitioner to enable him to appeal if he is so advised.

Settle order on notice.