SWIFT & COMPANY, Appellant,

v.

SOUTHWEST FERTILIZER & CHEMI-
CAL COMPANY, Appellee.

Patent Appeal Nos. 6430-6433.

United States Court of Customs
and Patent Appeals.
July 7, 1959.

As Corrected Nov. 4, 1959.

Rich, J., dissented in part.

Howard M. Biemeck, Chicago, Ill., Earl G. Spiker, Washington, D. C. (William E. Beringer, Chicago, Ill., of counsel), for appellant.

No appearance and no brief for appellee.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN, and JOHNSON, retired, Associate Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Commissioner of Patents, acting through the Assistant Commissioner, 115 U.S.P.Q. 16, in four consolidated trademark oppositions. The Commissioner affirmed dismissal of two oppositions to registrations of a mark comprising "SWF" with a design wherein the letters are superimposed on a picture of an American Indian type of flint arrowhead aimed at a bullseye symbol formed from the concentric letters "CCo," the design also including conventional parallel broken flight lines extending from the base of the arrowhead indicating travel through space toward the bullseye and being illustrated in 115 U.S.P.Q. at page 17. Registration of that mark is sought for fertilizers in Class 10 and insecticides in Class 6, in two separate applications.

The other two applications are for registration of "Swfgro," and "Swfkill" for fertilizers and insecticides, respectively. The examiner sustained the oppositions to registration of those marks, but the Commissioner reversed, holding them to be registrable. Thus all four applications have been found allowable. Appellant asks us to reverse the decision below as to all four.

Appellant opposed registration of all of appellee's marks on the basis of its prior use and registration of "Swift" and "Swift's" as trademarks for numerous products, including products

identical with those for which registration is sought by appellee, and prior use of the trade name of "Swift & Company."

Testimony was taken by opposer in the four oppositions on a consolidated basis, appellee offering no evidence. Appellee was, however, represented by counsel who cross-examined opposer's witnesses and contested the oppositions before the Examiner of Interferences and the Commissioner. On this appeal appellee has neither appeared nor filed a brief.

Appellant is an established national distributor of, among other things, fertilizers, insecticides, and weedicides. It uses the marks "Swift" and "Swift's" and the trade name "Swift & Company," also specific trademarks on specific products such as "Pasturgro," "Vigoro" and "End-O-Pest," the evidence indicating that the word "Swift's" is emphasized. As is generally known, "Swift" and "Swift's" are used on a large variety of products in addition to those directly involved in the instant applications.

Since there is no question as to priority or similarity of the goods, the only issue is whether concurrent use of the marks would be likely to cause confusion or mistake on the part of purchasers, or to deceive them, as to the source or origin of the goods within the meaning of the Lanham Act (Trademark Act of 1946), 15 U.S.C.A. § 1051 et seq.

As evidence of actual confusion between the instant marks, appellant offered the testimony of an employee, one Bruington, who testified that on three occasions farmers told him that they had purchased Swift & Company products, and showed him Southwest Fertilizer bags as being those in which that product was purchased. That evidence was held below to be inadmissible as hearsay. Appellant disputes that holding. However, in our opinion it is unnecessary to pass on that question since the testimony, even if admissible, is entitled to little weight, as reflected by the following cross-examination:

XQ32. Your testimony with respect to the belief of these farmers with respect to the Southwest Fertilizer & Chemical Company product is based solely on your present recollection of what somebody, whose name you don't remember, said to you in 1953 or 1954, is that correct? A. That is correct.

Considering first the marks "Swfgro" and "Swfkill," we agree with appellant that "kill" and "gro" are descriptive or, at least, suggestive of the goods on which the marks are used. We are unable to agree, however, that the letters "SWF" are substantially identical with "Swift" in appearance or sound, and certainly not in meaning. While it is true that the letters "SWF" appear in the word "Swift," they do not, standing alone, constitute a word, and there seems to be no good reason for regarding them as a word or attempting to pronounce them. The letters appear to be taken from a part of appellee's corporate name, i. e., "SW" for "Southwest," and "F" for "Fertilizer." If an attempt were made to pronounce "SWF" as a word it would be necessary to supply some vowel sound, and there is no more reason for supplying the sound of "i" than that of any other vowel. Further, appellee's marks must, as noted by the Commissioner, be considered in their entireties, and so considered they are, in our opinion, sufficiently different from appellant's marks to preclude any likelihood of confusion.

Our views as to the significance of the letters "SWF" in the "Swfkill" and "Swfgro" marks are generally applicable to those letters as they appear in the arrowhead mark described above. Moreover, the separate nature of the letters is accentuated in the latter mark by the presence of dashes between them and by their association with the letters "CCo." Those also appear to be taken from appellee's corporate name, "Southwest Fertilizer & Chemical Co." The arrowhead background and the distinctive arrangement of the letters provide an additional significant difference over the "Swift" and "Swift's" marks.

While it is always possible to point out specific similarities and differences between marks, the question whether confusion is likely to result from their concurrent use must be decided largely on the basis of opinion, depending upon consideration of all the circumstances of the particular case involved. We have given full consideration to appellant's arguments, including its extensive use and many registrations of "Swift" and "Swift's," but agree with the Commissioner that none of appellee's marks so resembles those of appellant as to be likely to cause confusion in trade or to deceive or mislead purchasers.

The decision is affirmed.

Affirmed.

RICH, Judge (dissenting in part).

I dissent from the decision of the majority in oppositions Nos. 33,410 ("Swfgro") and 33,440 ("Swfkill"). I would sustain these oppositions and in them I would reverse the decision below. Thus, I agree with the Examiner of Interferences, who sustained these two oppositions.

It is not often that I find myself in such complete disagreement with my colleagues as I do in this case, with respect not only to their conclusion but also the reasoning in support of it, which I consider to be untenable.

The majority agree with the Commissioner's conclusion that the marks "Swfgro" and "Swfkill" neither look nor sound like "Swift" or "Swift's." I think so too, but that is not the issue here. The issue is fixed for us by the statute, section 2(d) of the Lanham Act, which prohibits registration of a mark which

"(d) consists of or comprises a mark which *so* resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, *as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers:* * * * "

[Emphasis mine.] 15 U.S.C.A. § 1052(d).

It is too well settled to require citation of authority that this refers to confusion, mistake or deception *as to the source or origin of the goods.* The question is not whether anyone would confuse "Swfgro" or "Swfkill" with "Swift" or "Swift's," i. e. confuse the *marks,* but whether they are likely, when confronted with the marks, to be confused or deceived into, or make the mistake of, thinking that "Swfgro" or "Swfkill" *are products of opposer, Swift & Company, thus creating confusion as to origin.*

The record shows, not only that Swift & Company is a long-established and very well known company, distributor of many products other than the fertilizer and insecticides here involved, but also that in the period 1951–1955 Swift & Company was selling in excess of $35,000,000 worth of fertilizer, insecticides and weedicides *annually* under the "Swift" mark and its company name, though using *in addition* thereto specific marks such as "Pasturgro," "Vigoro" and "End-O-Pest" on specific products, and that appellant's advertising expenditures for these classes of products totaled over $8,000,000 for the period 1945–1954. The record further shows, what flows naturally from the foregoing facts, that "Swift" and "Swift's" are very well-known marks in both rural and urban areas. I think it unquestionable that they are entitled to the protection against encroachment afforded to "strong" trademarks. Furthermore, the fact that the public is so well acquainted with "Swift" and "Swift's" has an important bearing on likelihood of confusion as to origin.

I do not see how it can be gainsaid that "Swfgro" and "Swfkill" are word marks. They are not initials such as "RCA" or "SKF" or numerals. They look like words. The syllables "gro" and "kill" are common word syllables, at least phonetically. The marks are as much word marks as many other mis-

spelled trademarks, such as "Ez Flo," "Check-R," "Cut-N.Saw," "E-Z Way," "No-D'Ka," and "Pi-Do," to pick a few examples at random from the digest. The public is accustomed to seeing what might be termed "crazy spelling" word marks and is quite capable of supplying the missing vowel sounds as, for example, in "Pow-R-Matic" or "Tas-T-Nut." When a mark looks like or seems to be a word the public surely is going to try to pronounce it.

The majority says of the letters "SWF", "there seems to be no good reason for regarding them as a word or attempting to pronounce them. The letters appear to be taken from a part of appellee's corporate name, i. e., 'SW' for 'Southwest' and 'F' for 'Fertilizer,'." I can agree with neither of these ideas. The marks sought to be registered are simply misspelled words printed all in block letters, looking, for all practical purposes, just as they do here in print. No part of either mark contains any reference to the Southwest Fertilizer & Chemical Company, a firm domiciled in El Paso, Texas. The public viewing the marks, in the form sought to be registered, will not have all of the information that the judges of this court have and I see no reason to assume that they will have any knowledge whatever as to what the letters "SWF" stand for or why they were used in the marks. They will take the marks to be words and they will pronounce them.

The majority opinion says, "If an attempt were made to pronounce 'SWF' as a word it would be necessary to supply some vowel sound, and there is no more reason for supplying the sound of 'i' than that of any other vowel." This means, I suppose, that the majority see as equally probable pronunciations, to take just one of the marks, Swifkill, Swafkill, Swefkill, Swofkill and Swufkill. I think this answers the statement that there is no more reason to select "i" than any other vowel. Of course, there is a reason. The first pronunciation, which is indistinguishable from "Swift-kill," means something and the other

postulated pronunciations are meaningless. I think there is only one probable pronunciation. Furthermore, nobody suggests that "SWF" will be pronounced "as a word." The contention is that the marks, "Swfgro" and "Swfkill" will be pronounced as words and that when they are pronounced the result will be "swift-kill" and "swift-grow," because these sounds make sense and communicate thoughts which are relevant to the insecticide and fertilizer products, respectively.

The majority opinion rightly says that "appellee's marks must * * * be considered in their entireties" and this is the rule I have followed. It seems to me the majority has not done so. The rule leads me to the conclusion that there is great likelihood that people seeing the marks, in their entireties, will think that Swift & Company is putting out a fertilizer which is called "swift-gro," misspelled "Swfgro" and an insecticide called "swift-kill," misspelled "Swfkill," misspellings being very common in the trademark field. This will create confusion and mistake, if not deception, as to origin. I could pursue the possibilities further into the field of the spoken word, of radio, TV and orders telephoned to the local supplier by the Texas farmer. I somehow cannot imagine him asking for some of that "Southwest Fertilizer Gro" or "Southwest Fertilizer Kill," or "Ess-double-you-eff-grow" or "Ess-double-you-eff-kill." Neither can I imagine what the announcers on TV and radio are going to say unless it be something that sounds very like "swif-gro" or "swif-kill" and I doubt that these would be distinguishable from "Swift-Gro" and "Swift-Kill."

I have not overlooked the fact that my reasoning proceeds from the premise that there is a likelihood people are going to pronounce appellee's marks as "swift grow" and "swift-kill" and that these words have an ordinary meaning unrelated to Swift & Company or the trademark "Swift," implying the swift growing of crops and the swift killing of insects. Nevertheless, these meanings in-

volve the voicing or thinking of the word "swift" and I, for one, am unable to say whether the public is going to make a mental association with the opposer or with the speed of growing or killing, or both. One seems as likely as the other. All that is necessary to require that we sustain the oppositions to these word marks is that there be *likelihood* of confusion. Certainty is not required. I believe such a likelihood exists.

As substantiating likelihood of confusion or mistake, appellant produced the testimony of one of its sales managers in agricultural chemicals. He testified that in the fall of 1953 or spring of 1954, travelling in the Imperial Valley of Southern California on a sales trip, on three occasions, after introducing himself to farmers as the representative of Swift & Company, selling insecticides, he had been told by the farmers that they had used Swift's product. The record then contains this:

[The Witness:]

"I didn't think they had, because we had not sold in that area of Imperial Valley for many years, and so I asked them if they were sure they had used our product, and they said yes.

"Mr. Irons: Will you note the objection on the record as to what the farmer said, and to his testifying as to what the farmer said?

"The Witness: They just showed me bags, and it was not Swift & Company's products at all; it was Southwest Fertilizer's. It was called "Swfkil"—the ones I saw."

The Commissioner considered this to be wholly inadmissible hearsay. The majority finds it "unnecessary to pass on that question since the testimony, even if admissible, is entitled to little weight." As I understand this attitude it means that *assuming* the evidence to be admissible, it would not affect the majority's decision. While this evidence may not be very weighty, since the witness was an employee of opposer and there is neither documentary support nor other corroboration, I think its admissibility should have been passed on. I do not see that it is hearsay insofar as it has any bearing here. The witness was not testifying as to anything more than his own knowledge of what he heard and saw with his own ears and eyes. He said that farmers told him they had used his employer's insecticide products and that he saw the bags in which those insecticides were contained, testifying as to what he saw on them. On the admissibility problem, the point at issue is not whether the farmers *used* Swift products but whether they *thought* they had when in fact they had not, i. e., whether they were confused. The testimony of the witness as to what he heard the farmers say and as to what he saw in the way of bags is simply testimony as to his personal observation of confusion on the part of the farmers he was talking to. Such testimony is not hearsay. It is a first-hand report of what was observed by the witness. Insofar as it is credible, it is evidence of *actual* confusion. Such evidence has often been admitted in trademark cases. See Proctor & Gamble Company v. J. L. Prescott Company, 3 Cir., 102 F.2d 773 and International Milling Co. v. Robin Hood Popcorn Co., 110 U.S.P.Q. 368, 370 (Com'r). This evidence is cumulative on the *likelihood* of confusion issue and, taken with the other points discussed above based on the marks themselves, there is a more than adequate basis for sustaining the oppositions to the registration of the marks "SWFGRO" and "SWFKILL."