· MATTER OF BUFALINO

In Deportation Proceedings

A–10607337

*Decided by Board September 30, 1965*

(1) Where the special inquiry officer states unequivocally and without hesitation that he did not prejudge the cause; that he received no advice, instructions, or directions whatsoever in the cause; and that all his determinations were premised solely on his honest and sincere evaluation of the evidence adduced and his understanding and knowledge of the applicable laws and ·regulations, his unequivocal statement of lack of prejudgment or prejudice effectively meets respondent's claim of prejudgment.

(2) Respondent, who, subsequent to his lawful admission to the .United States for permanent residence in 1914, became deportable upon reentry without inspection by falsely claiming U.S. citizenship, is statutorily ineligible for the creation of a record of lawful admission under section 249, Immigration and Nationality Act, as amended, since a record of lawful admission in his case is still available; likewise, he is statutorily ineligible for adjustment of status under section 245 of the Act, as amended, since he was not inspected.

(3) Since respondent, who is deportable on grounds within the terms of both, subsections (a)(1) and ·(a)(2) of section 244 of the Act, as amended, is thereby statutorily precluded from establishing eligibility for suspension of deportation under section 244(a)(1), he must establish eligibility for such relief under section 244(a)(2) of the Act.

(4) The 10-year period of continuous physical presence required to establish statutory eligibility for suspension of deportation under section 244(a)(2) of the Act, as amended, runs from the date of the last deportable act.

(5) Respondent, by his evasive, equivocal, discrepant, and contradictory statements coupled with his demeanor while testifying before the special inquiry officer, is found to have given false testimony and, therefore, is precluded by section 101(f)(6) of the Act from establishing good moral character for purposes of qualifying for the exercise of discretionary relief.

(6) Respondent, a native and citizen of Italy, who claims that his United States-acquired criminal reputation would result in certain intensive restrictions on his liberty, social, and economic life so as to impose severe, if not total, economic sanctions, if deported to Italy, has not established that such deportation would result in "physical persecution" within the meaning of section 243(h) of the Act, as amended, since there is no evidence re-

351

spondent would be subject to physical persecution on account of race, religion or political viewpoint.

CHARGES:

. Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

Order: Act of 1952—Section 241(a)(5) [8 U.S.C. 1251(a)(5)]—Failed to furnish address and other information required by section 265 and has not established failure was reasonably excusable or was not wilful.

Lodged: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—not in possession of valid visa or other valid entry document. ·

The case comes forward on appeal from the order of the special inquiry officer. dated March 17, 1965, denying the respondent's various applications for discretionary relief, ordering respondent deported on the charges contained in the order to show cause and on the lodged charge to Brazil, in the alternative, to Italy, and further ordering that the respondent's application for withholding of deportation to Italy under section 243(h) of the Immigration and Nationality Act be denied.

The order of the special inquiry officer sets forth the prior action in the case. The respondent is a native and citizen of Italy, 61 years old, male, married. The proceedings were instituted on December 16, 1957 by the issuance and service of an order to show cause which charged the respondent with being deportable on the two grounds set forth in the caption. The second charge was amended by being restricted to allege the respondent's failure to furnish notification of his address to the Attorney General only during the years 1956 and 1957. A third charge was lodged that the respondent was deportable under the provisions of section 241(a)(1) of the Immigration. and Nationality Act (8 U.S.C. 1251(a)(1)) as one who was excludable at time of entry into the United States at New York, New York on May 5, 1956 because he was then an alien immigrant who entered by claiming to be a citizen of the United States and was not in possession of an unexpired immigrant yisa or valid entry document. .

. The respondent through counsel admitted the charge of entry without inspection and the lodged charge of entry without proper documentation. The second charge under section 241(a)(5), was disputed. After hearing, the then presiding special inquiry officer entered a decision on April 2, 1958 finding respondent deportable on all three charges. Applications for discretionary relief from de-

portation were denied and deportation was directed. On appeal, this Board initially remanded the cause for further hearing. Then, upon motion for reconsideration, it certified the case to the Attorney General, who, in turn, directed that a decision be entered by the Board on the merits and on September 2, 1958, this Board dismissed the respondent's appeal.

A petition for review of the order of deportation and denial of the applications for discretionary relief, filed in the United States District Court for the Eastern District of Pennsylvania, was dismissed on April 8, 1959. This grant of summary judgment by the District Court was affirmed on April 1, 1960 by the United States Court of Appeals for the Third Circuit (*Bufalino* v. *Holland,* 277 F.2d 270) and certiorari was denied (364 U.S. 863 (1960)).

Administratively, and not as part of the deportation proceedings, the respondent then sought the creation of a record of lawful admission for permanent residence, pursuant to the provisions of section 249 of the Immigration and Nationality Act (8 U.S.C. 1259), and alternatively, withholding of deportation to Italy, the country directed by the District Director pursuant to the provisions of section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253(h)). The determination on each of the applications was adverse to the respondent who then sought judicial review in the United States District Court for the District of Columbia. Summary judgment was entered against the respondent on June 7, 1962. The respondent appealed and the appellate court, on June 6, 1963, reversed (*Bufalino* v. *Kennedy,* 322 F.2d 1016 (D.C. Cir.)) and directed that the cause be returned to the District Court for a trial upon the limited issue of the respondent's contention that there had been adverse prejudgment of his applications by the Immigration and Naturalization Service.

Subject to the approval of the United States Court of Appeals for the District of Columbia Circuit, respondent's counsel and the United States Attorney on September 26, 1963 stipulated that the cause be remanded through the District Court to the Immigration and Naturalization Service with directions to reopen the administrative deportation proceedings. The stipulation specifically limited the scope of the further proceedings to a redetermination of the previous administratively denied applications of the respondent for withholding of deportation and for creation of a record of lawful admission for permanent residence and to a determination of the country of deportation in accordance with section 243(a) of the Immigration and Nationality Act (8 U.S.C. 1253(a)). Leave was

also granted in the stipulation for the respondent to raise, promptly both before the special inquiry officer and the Board of Immigration Appeals, the claim of prejudgment which he had asserted during the litigation. After approval of this stipulation by the United States Court of Appeals for the District of Columbia Circuit on October 14, 1963, the District Court, in turn, on October 31, 1963, remanded the cause to the Immigration and Naturalization Service. The Board of Immigration Appeals then, on November 15, 1963, administratively remanded the cause for further proceedings consistent with the District Court's order and the stipulation. Pursuant to further stipulations between counsel and the trial attorney for the Service, the proceedings were enlarged to permit the respondent to file applications for suspension of deportation and voluntary departure in lieu of deportation under section 244 of the Immigration and Nationality Act, as amended (8 U.S.C. 1254, as amended), and for change of status to that of a lawful resident alien under section 245 of the Immigration and Nationality Act, as amended (8 U.S.C. 1255, as amended), and to require a determination on each of the applications.

At the outset of the reopened proceedings on March 2, 1964, respondent's counsel moved for disqualification of the special inquiry officer and for the appointment of an attorney outside the Department of Justice to conduct this hearing. The motion was denied. A similar motion had been denied by the Acting Attorney General on January 27, 1964. The applications were bottomed upon respondent's contention that the ultimate determination in this cause had been prejudged, as indicated by public statements made by the Attorney General with respect to the respondent and his activities. The special inquiry officer stated unequivocally and without hesitation, that he has received no advice, instructions, or directions whatsoever in this cause from anyone (other than the mere assignment to preside); that the interim determinations and rulings and this decision were premised solely upon his understanding and knowledge of the applicable laws and regulations and his honest and sincere evaluation of the evidence adduced, including his appraisal of the credibility of the respondent and witnesses; that he has not been influenced to any degree by allegations (made essentially by respondent's counsel) that information outside the record exists; and this cause was not in any way prejudged by him.

In the order remanding the case on the issue of prejudgment (*Bufalino v. Kennedy*, 322 F.2d 1016 (D.C. Cir.)) the court relied on the case of *Accardi v. Shaughnessy*, 347 U.S. 260, to hold that the

word "discretion" means that the recipient of the Attorney General's authority must exercise his authority according to his understanding and conscience. The Circuit Court also cited the case of *Shaughnessy* v. *Accardi*, 349 U.S. 280. This case held that the record fully supported the District Court's conclusion that the Board's decision represented the free undictated decision of each member and that there was no proof of prejudgment. Similarly, we come to the conclusion that the special inquiry officer's statement of lack of prejudice or prejudgment effectively meets respondent's claim of prejudgment. We note that counsel has not charged the Board with prejudgment.[1]

The special inquiry officer found that respondent was deportable on all three charges urged against him in the administrative deportation proceedings relying upon *Bufalino* v. *Holland*, 277 F.2d 270 (3rd Cir., 1960), certiorari denied 364 U.S. 863, 5 L. ed 2d 85 (1960). He also quoted the Court of Appeals for the District of Columbia Circuit which ruled that the validity of that deportation order can no longer be challenged. *Bufalino* v. *Kennedy*, 322 F.2d 1016 (1963), although that court did remand the case for a hearing on the issue of prejudgment. The special inquiry officer concluded that deportability of the respondent was established as a matter of law and refused to permit an attack upon the validity of the deportation order based upon the ruling of the Supreme Court in *Rosenberg* v. *Fleuti*, 374 U.S. 449. Parenthetically, the *Fleuti* doctrine is inapplicable in the case of a lawful permanent resident, who, following a brief, casual visit abroad, reentered the United States upon a false claim of citizenship thereby avoiding inspection as an alien. In such a case an entry has been made within the meaning of section 101(a)(13) of the Immigration and Nationality Act upon which a ground of deportation might be predicated.[2]

The respondent has submitted formal applications for the creation of a record of admission for permanent residence under section 249 of the Immigration and Nationality Act, for suspension of deportation and for permission to depart voluntarily under section 244 and for adjustment of status as a lawful resident pursuant to section 245. We shall deal with these applications separately. Section 249 of the Immigration and Nationality Act provides that a record of lawful admission for permanent residence may, in the discretion

---

[1] See *Marcello* v. *Bonds*, 349 U.S. 303.

[2] *Matter of Kolk*, Int. Dec. No. 1443. The case of *Zimmerman* v. *Lehmann*, 339 F.2d 943 (7th Cir., 1965), may be distinguished on the ground that there existed a bona fide, although erroneous, assumption on the part of the alien that he was a derivative citizen at the time of his reentry from Canada.

of the Attorney General and under such regulations as he may pre scribe, be made in the case of any alien * * * if no such record is otherwise available and such alien shall satisfy the Attorney General that he is not inadmissible under section 212(a) insofar as it relates to criminals, procurers and other immoral persons, subversives, violators of the narcotic laws or smugglers of aliens, and he establishes that he (a) entered the United States prior to June 28, 1940; (b) has had his residence in the United States continuously since such entry; (c) is a person of good moral character; and (d) is not ineligible to citizenship.

The respondent originally entered the United States in December 1903 and apparently left in 1904, reentering in January of 1906 and leaving again in 1910. He was admitted for permanent residence at the port of New York on February 15, 1914. The evidence establishes that the respondent has had residence in the United States since at least 1927. There appear to have been brief departures from the United States to Canada during the early or mid-1920's, the exact time and number is not definitely established. However, all departures were for a day or less and they were in connection with the respondent's then employment in the Buffalo, New York area. The respondent also concedes that he made two trips to Cuba—in 1951 and in 1956—for a short period of two or three days and additionally, preceding the 1956 trip to Cuba, he made a four or five-day vacation trip to Bimini in the West Indies. It is clear, as the respondent concedes, that in 1951 and in 1956, when he returned from the two trips to Cuba and the trip to Bimini, he represented himself to be a United States citizen and was admitted as such.

There exists in the respondent's case a record of lawful permanent admission in 1914. Subsequently, he became deportable by virtue of his entry as a United States citizen, thereby entering without inspection. The special inquiry officer has relied upon *Matter of R—*, 8 I. & N. Dec. 598, to hold that the record of his admission is not presently available, since by reason of his deportability, his status must be deemed to have been changed within the contemplation of section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)). However, *Matter of R—, supra*, a decision of the Assistant Commissioner, has been overruled by this Board in *Matter of M—P—*, 9 I. & N. Dec. 747 (affirmed, *Maldonada v. Rosenberg*, No. 62-1123-K, S.D. Cal. C.D. (December 27, 1962)); *Matter of Preciado-Castillo*, Int. Dec. No. 1230; see also *Matter of Edwards*, Int. Dec. No. 1333, which cites these two cases. Inasmuch as there exists a record of lawful entry which has not been vitiated

by the respondent's subsequent deportability, he is not eligible for a creation of a record of lawful admission pursuant to section 249 of the Immigration and Nationality Act. The issue of good moral character, although irrelevant in view of the fact that the respondent has been found ineligible for this form of relief, will be discussed later. .

The respondent has applied for suspension of deportation pursuant to section 244(a) of the Immigration and Nationality Act (8 U.S.C. 1254(a)). On the basis of his long residence in the United States— 56 of his 61 years, the fact that his wife, to whom he has been married for 36 years, is totally dependent upon him for support and maintenance, family ties of two sisters and a brother, the respondent's deportation would result in either "extreme hardship" under subsection (1), or "exceptionally and extremely unusual hardship" under subsection (2) of section 244(a). However, the amendment of section 244(a) by the Act of October 24, 1962, 76 Stat. 1247, specifically provides in subsection (1) that subsection shall apply where the respondent "is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection." Inasmuch as the respondent is deportable under a section included in paragraph (2) under section 241(a)(5) he must meet the requirement of "exceptional and extremely unusual hardship" and must establish that for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, he must prove that during all of such period he has been and is a person of good moral character. Thus the holding in *Dessalernos* v. *Savoretti*, 356 U.S. 269 (1958), which applied to the Act before its amendment by the Act of October 24, 1962 is inapplicable.[3]

The respondent must meet the requirement in subsection (2) of section 244(a) of ten years' physical presence.[4] This ten-year period must be continuous immediately following the commission of an act constituting a ground of deportation. In *Matter of B—*, Int. Dec. No. 1380, this Board held that the ten-year period begins to run from the time an alien first becomes deportable. This holding was based upon *Fong* v. *Immigration and Naturalization Service*, 308 F.2d 191 (9 Cir. 1962), which led to the overruling of the holding in *Matter of V—R—*, 9 I. & N. Dec. 340, which held that the ten-year period is determined by the date of the last deportable act. Sub-

---

[3] *Krug* v. *Pederson*, C 62-376. No. D. Ohio. E.D. (June 24, 1964), unreported.

[4] *Chang Wing Cheung* v. *Hagerty*, 271 F.2d 903 (1 Cir. 1959). cert. den. 362 U.S. 911, rehearing denied 362 U.S. 937.

sequently, the court in *Patsis* v. *Immigration and Naturalization Service*, 337 F.2d 733 (1964), expressly disavowed the holding in the *Fong* case and approved the holding in *Matter of V—R—*, 9 I. & N. Dec. 347, that the ten-year period runs from the date of the commission of the last deportable act.[5] In view of the diversity of the court holdings we are inclined not to disturb the holding of the special inquiry officer that the respondent does not possess the required ten years' residence in the United States subsequent to his failure in January 1956 and January 1957 to report his address, especially in view of the prior holding in the Third Circuit in *Bufalino* v. *Holland*.[6] Thus he is not eligible for suspension of deportation or for voluntary departure.

The final application for relief from deportation is the request for status as a permanent resident under the provisions of section 245 of the Immigration and Nationality Act as amended (8 U.S.C. 1255, as amended). This section reads in pertinent part as follows:

Section 245. (a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment (2) the alien is eligible to receive an immigrant visa and is admissable to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved * * *.

The respondent has made an application for such adjustment and has been found to be mentally and physically sound, his financial responsibility is established and the evidence does not bring him within any of the excludable provisions of section 212(a) of the Immigration and Nationality Act. He is statutorily eligible to receive a visa and such a visa is immediately available to him on the basis of his marriage to his United States citizen wife who has filed for a nonquota visa on his behalf. However, the existence of good moral character for a reasonable period of time must be considered in determining whether an applicant for status as a permanent resident under the provisions of section 245 of the Immigration and Nationality Act merits the favorable exercise of discretion.[7]

---

[5] The court in a prior proceeding in this case *Bufalino* v. *Holland*, 277 F.2d 270 (3rd Cir. 1960), likewise held that the ten-year period of residence subsequent to the last deportable act was required and for this reason denied suspension of deportation and voluntary departure.

[6] See also *Williams* v. *Sahli*, 271 F.2d 228 (6 Cir. 1959), and *Krug* v. *Pederson*, N.D. Ohio, E.D. (June 24, 1964), unreported; *Matter of Graham*, Int. Dec. No. 1483.

[7] *Matter of Francois*, Int. Dec. No. 1263.

Section 245 specifically requires that an alien applying for status as a permanent resident be inspected and admitted into the United States. The respondent in the instant case has been found deportable as one who obtained entry into the United States in April 1956 and in May 1956 on the ground that he knowingly, wilfully and falsely claimed to be a United States citizen on the occasion of those two entries, thereby entering without inspection, as heretofore found by the Court of Appeals for the Third Circuit in prior proceedings, a deportability finding that can no longer be challenged. Inasmuch as the respondent has not been inspected he is ineligible for status as a permanent resident under section 245 of the Immigration and Nationality Act.[8] We note the case of *Tibke* v. *Immigration and Naturalization Service*, 335 F.2d 42 (2d Cir. 1964). However, that case involved an alien who first entered the United States in 1958 as an immigrant admitted for lawful permanent residence and subsequently became deportable upon conviction of two crimes involving moral turpitude under section 241(a)(4) of the Act, which was waived under section 212(g) on the basis of a finding that his exclusion would result in extreme hardship to his citizen spouse and that the admission of the alien would not be contrary to the national welfare and security of the United States. It is to be observed that in *Tibke*, the alien never left the United States after his lawful admission for permanent residence in 1958. The court, in finding Tibke eligible for adjustment under section 245 of the Immigration and Nationality Act, rejected the argument that he was eligible to adjust his status only under the provisions of section 244. We believe that Tibke should be confined to the facts and is not applicable to the present case where there have been departures and a finding of deportability based upon entry without inspection.

The question of good moral character on the part of the respondent is common to all of his applications for relief from deportation as a matter of eligibility or as a matter of discretion. The special inquiry officer in the 1958 proceeding was convinced that the respondent's testimony in respect to his business connections and income knowingly and deliberately told less than the truth and that his testimony was contradicted time and again by the respondent's own testimony and other evidence of record. This finding was expressly approved by the Court of Appeals for the Third Circuit in *Bufalino* v. *Holland*, 277 F.2d 270 (1960), which held that the respondent's testimony regarding his employment for the past five years was inaccurate and lacked required honesty and frankness;

---

[8] *Matter of S—*, 9 I. & N. Dec. 599.

instead of a direct answer to this simple inquiry, the sum ,total of the respondent's contradictory and confusing testimony elicited after lengthy cross-examination demonstrated he had many other employment associations and income-producing connections concerning which his testimony was intentially and purposely vague and uninformative. Having determined that the respondent testified falsely in the 1958 proceedings in order to avoid deportation, the court found that the special inquiry officer was required to find that the respondent was not a person of good moral character, in view of the requirement of 8 U.S.C. 1101(f)(6) which provides than an alien who testifies falsely to procure benefits under the Immigration and Nationality Act is estopped from demonstrating himself to be a person of good moral character.

The special inquiry officer in the present proceedings, finds from his demeanor as well as his confusing, contradictory testimony, that the respondent was deliberately untruthful, that the so-called "mistakes" were not innocent, and that he has given false testimony in this cause. As the trier of facts, the observations of the special inquiry officer regarding the respondent's demeanor, attitude and actions while testifying are material and relevant to the issue of credibility. The special inquiry officer has set out (pp. 28–47) various aspects of contradictions and discrepancies in the record regarding his meetings with certain persons who attended a meeting at Apalachin and explanations regarding his association with a Mrs. Jane Collins. We believe that the cumulative effect of the testimony, which is full of distortion, half truths, incomplete answers, misleading responses, evasion, concealment, suppression, equivocation and quibbling is such as to cast a serious doubt upon its credibility. In a situation where the respondent is an applicant for discretionary relief, the Government is entitled to the truth and the burden is on the respondent to establish that he has been of good moral character for the required period. It is not incumbent upon the Attorney General to establish that respondent was not a person of good moral character.[9] The special inquiry officer has concluded that the respondent, who made false statements in a 1958 proceeding, as found by the prior special inquiry officer and the Court of Appeals for the Third Circuit, has continued to do so in the 1964 proceedings before him. Upon this record and based upon the opinion of the

[9] *In re Sittler*, 197 F. Supp. 278, affirmed *Sittler* v. *United States*, 316 F.2d 312 (2d Cir. 1963); *Brownell* v. *Cohen*, 250 F.2d 770 (DC. Cir. 1957); *Preisler* v. *United States*, 238 F.2d 238 (2d Cir. 1956), cert. den. 352 U.S. 990 (1957); *Chaunt* v. *United States*, 364 U.S. 350 (1960); *United States* v. *Accardo*, 113 F. Supp. 783 affd. 208 F.2d 632 (3d Cir. 1953), cert. den. 347 U.S. 952.

special inquiry officer, the trier of the facts, regarding demeanor, lack of candor and probity, we are not disposed to find his evaluation of the testimony incorrect. The respondent is ineligible for discretionary relief, including the discretionary relief of section 245 of the Immigration and Nationality Act because he has failed to establish good moral character for the past ten years. In addition, the respondent has failed to establish the requisite ten years of continuous physical presence in the United States since his last deportable act.

The respondent designated Brazil as the country of deportation in the event that he is ordered deported, and Italy has been named as the alternative country of deportation in the event deportation cannot, pursuant to the statute, section 243(a) of the Immigration and Nationality Act (8 U.S.C. 1253(a)), be effected to Brazil. The respondent has submitted an application for withholding of deportation to Italy pursuant to the provisions of section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253(h)), alleging that he will be physically persecuted if deported there. Although the respondent has testified that the "Mafia" is a fable and the "Cosa Nostra" does not exist, nevertheless, since he has acquired the reputation of a gangster, mobster, and racketeer in the United States, the Italian authorities are well aware of this reputation and that as a result thereof they will subject him upon his deportation to Italy to such treatment and restrictions as will constitute physical persecution. He contends that in accordance with Italian law and practice, if deported to Italy, he will be subjected to certain intensive restrictions upon his liberty and his social and economic life, including confinement or restriction to a small village in the Sicilian peninsula of Italy, limitation in his freedom of movement throughout the country, subjection to surveillance, interrogation, and possibly arrest, with or without probable reason or cause, and denial of employment opportunities because of physical disabilities and the proscription of the Italian statutes, so as, in fact, to impose severe, if not total, economic sanctions and restrictions.

The phrase "physical persecution" as used in section 243(h) of the Immigration and Nationality Act has been interpreted as meaning confinement, torture, or death inflicted on account of race, religion, or political viewpoint.[10] It has also been held that economic proscription so severe as to deprive a person of *all* means of earning

---

[10] *Blazina v. Bouchard*, 286 F.2d 507 (3rd Cir. 1961), cert. den. 366 U.S. 950; *Diminich v. Esperdy*, 299 F.2d 244 (2d Cir. 1961), cert. den. 369 U.S. 844.

a livelihood may amount to physical persecution.[11] This of course means economic proscription inflicted because of race, religion or political viewpoint. On the other hand, possible incarceration for one or two years for illegally deserting a vessel, difficulties and hardships feared by the alien on his return, and imprisonment for conviction of a crime do not constitute physical persecution as that term is used in section 243(h) of the Act.[12] Whatever physical persecution is claimed by the respondent arises out of his actions and reputation in the United States. The Government of Italy is a democratic one and not totalitarian. There is no doubt that if the respondent were tried, he would receive a judicial trial with adequate safeguards. The claim of physical persecution stems from speculation and conjectures unrelated to the respondent himself. There is no evidence that the respondent would be subject to physical persecution within section 243(h) of the Immigration and Nationality Act because of race, religion or political viewpoint. It is concluded that respondent has failed to establish his claim of physical persecution and his application for withholding of deportation is denied. The constitutional question urged by counsel, that deportation would constitute cruel and unusual punishment in violation of the Eighth Amendment, is not cognizable in this forum.

We have also considered other objections raised by counsel. There is no requirement in the statute or in the regulations regarding an independent character investigation. In view of the numerous witnesses in this case, such an investigation would appear to be superfluous. However, where discretionary relief is denied, it is neither usual practice nor requirement that such an investigation be conducted and the Government has not relied on an investigation. We regard the denial by the special inquiry officer of the request for subpoenas to assure the presence of various Government officials of other agencies as vague, irrelevant and immaterial because there is not in issue matters which may or may not have been the subject of investigation by the Federal Bureau of Investigation, the Internal Revenue Service, or the Bureau of Narcotics. A request for a deposition has been granted. Viewing the record as a whole, we do not find there was any prejudicial error committed and conclude that the respondent has been given a fair hearing. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

---

[11] *Dunat* v. *Hurney,* 297 F.2d 744 (3rd Cir. 1952).

[12] *Zupicich* v. *Esperdy,* 319 F.2d 773 (2d Cir. 1963); *Soric* v. *Flagg,* 303 F.2d 289 (7th Cir. 1962); *Kalatjis* v. *Rosenberg,* 305 F.2d 249 (9th Cir. 1962).